817 So.2d 167 (2002)
STATE of Louisiana
v.
Mary GAGNON.
No. 01-KA-1302.
Court of Appeal of Louisiana, Fifth Circuit.
April 10, 2002.
*168 Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Allison Wallis, Assistant District Attorneys, Gretna, LA, for Plaintiff/Appellee.
Margaret S. Sollars, Louisiana Appellate Project, Thibodaux, LA, for Defendant/Appellant.
Panel composed of Judges SOL GOTHARD, THOMAS J. DALEY and WALTER J. ROTHSCHILD.
GOTHARD, Judge.
The defendant, Mary Gagnon, pled guilty to one count of possession of cocaine in violation of La. R.S. 40:967C, reserving her right to appeal the ruling on the motion to suppress under State v. Crosby, 338 So.2d 584 (La.1976). Thereafter the trial court sentenced the defendant, according to the plea agreement, to two years at hard labor and to pay fines totaling $300.00. The trial court suspended the sentence and placed the defendant on active probation for two years. The defendant now appeals.

FACTS
The following facts were developed from the testimony at the suppression hearing. Agent Frank Horn of the Jefferson Parish Sheriff's Office Narcotics Division was the only person to testify at the motion to suppress. Horn testified that he had been with the Narcotics Division for eight years. He stated that he received information that a black male, named Bruce Amos, and Jennifer Zawopaport were selling cocaine from an apartment on the second floor at 1161 Lake Avenue. Horn also stated that residents of the apartment complex complained about the amount of traffic in and out of the apartment, and that Bruce Amos would often meet people at the gateway of the apartment complex.
*169 On March 1, 2001, Agent Horn conducted surveillance on the apartment to verify that a black male was living at the apartment. He testified that he observed a black male on the balcony of the apartment, and that this individual left the apartment in his car. Horn then set up another surveillance on March 15, 2001. Horn observed a tan-colored station wagon parked near the apartment complex, and a white female, later identified as the defendant, exit the vehicle. According to Horn, she met a black male at the entrance gate to the apartment complex for about thirty seconds. Agent Horn testified that this was consistent with a narcotics deal; however, he admitted that he did not witness a hand-to-hand transaction. The defendant returned to her car and left the complex.
Horn stated that he followed the station wagon to obtain the license plate number and identify the driver. Horn testified that the goal of following the defendant was to identify as many persons as possible visiting the residence and check their criminal histories in order to either obtain a search warrant for Mr. Amos' residence or disprove the residents' complaints. Horn followed the vehicle to the 300 block of Glenn Street. According to Horn, the car appeared to be stopping, and, at that point, he turned on his flashing lights. He explained that he did not have time to run the license plate number. In explaining the basis for the stop of the defendant's vehicle, Agent Horn testified that the stop was "Based upon the activity I had seen and the fact that we wanted to identify any persons or the driver of the vehicle and try to get an identification so that we could further our investigation into the apartment."
Horn approached the vehicle, and asked the driver to exit the vehicle. He asked for her license and registration. According to Horn, the defendant informed him that she did not have a driver's license. Horn asked the defendant to exit the vehicle and turn around. He testified that, as he went to place his hands on the defendant, she asked, "Why are you able to put your hands on me?" Horn replied that she was under arrest for not having a valid driver's license. He conducted a pat-down search of the defendant and found one small off-white rock in her left front pants' pocket. He stated that the substance was consistent with crack cocaine. Agent Horn read the defendant her Miranda warnings. He testified that the rock-like substance tested positive for cocaine.
On cross-examination, Agent Horn stated that he had never seen the defendant or her vehicle at the complex before. He also stated that the defendant did not commit any traffic violations. Horn testified that the house on Glenn Street, where the defendant stopped her vehicle, was her residence.

ANALYSIS
In this appeal, the defendant alleges that the trial court erred by failing to suppress physical evidence gathered as the result of an illegal seizure. The defendant contends that Agent Horn lacked reasonable suspicion to stop her and, therefore, any evidence obtained as a result of the illegal stop was tainted.
The Fourth Amendment to the United States Constitution and Article I, Section 5 of the Louisiana Constitution prohibit unreasonable searches and seizures. If evidence was derived from an unreasonable search or seizure, the proper remedy is exclusion of the evidence from trial. State v. Benjamin, 97 3065 (La.12/1/98), 722 So.2d 988 (citing Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914); State v. Tucker, 626 So.2d 707 (La.1993)).
*170 The right of law enforcement officers to stop and interrogate one reasonably suspected of criminal conduct is recognized by La.C.Cr.P. art. 215.1[1], as well as state and federal jurisprudence. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State v. Belton, 441 So.2d 1195 (La.1983), cert. denied, Belton v. Louisiana, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984). The right to make an investigatory stop and question the particular individual detained must be based upon reasonable suspicion to believe that he has been, is, or is about to be, engaged in criminal activity. State v. Miskel, 95-584 (La.App. 5 Cir. 1/30/96), 668 So.2d 1299. "Reasonable suspicion" is something less than probable cause and is determined under the facts and circumstances of each case by whether the officer had sufficient facts within his knowledge to justify an infringement on the individual's right to be free from governmental interference. State v. Sanders, 97-892 (La. App. 5 Cir. 3/25/98), 717 So.2d 234, 240, writ denied, 98-1163 (La.9/25/98), 724 So.2d 774. An officer's mere unparticularized suspicion or "hunch" of criminal activity is insufficient to establish reasonable grounds to stop a person. United States v. Sokolow, 490 U.S. 1, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989); State v. Barney, 97-777 (La.App. 5 Cir. 2/25/98), 708 So.2d 1205.
The officer "`must have a particularized and objective basis for suspecting the particular person stopped of criminal activity'" and must be able to articulate the specific facts upon which his suspicion is based. State v. Huntley, 97-0965 (La.3/13/98), 708 So.2d 1048, 1050 (quoting United States v. Cortez, 449 U.S. 411, 417, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981)). The facts upon which an officer bases an investigatory stop should be evaluated in light of the circumstances surrounding the incident. When determining whether an investigatory stop was justified by reasonable suspicion, a reviewing court must consider the totality of the circumstances, "giving deference to the inferences and deductions of a trained police officer." State v. Martin, 99-123 (La.App. 5 Cir. 6/1/99), 738 So.2d 98, 101. This determination is made by analyzing whether the officer had sufficient knowledge of articulable facts and circumstances to justify an infringement on the individual's right to be free from governmental interference. State v. Hartzheim, 93-631 (La.App. 5 Cir. 2/23/94), 633 So.2d 768.
The issue in this case is whether Agent Horn's initial stop of the defendant was justified by reasonable suspicion, based on the totality of the circumstances. Agent Horn received information that a black male was purportedly selling narcotics at his apartment on the second floor, and that this male would also meet persons at the gateway to the apartment complex. Horn observed the defendant meet the black male at the gateway for a brief moment. Agent Horn's testimony indicated that, at the time of the observation, he was unsure of the validity of the tenants' complaints. He testified that the objective in following the defendant was to obtain information about any persons leaving the apartment and to check their criminal histories in order to obtain a search warrant for Mr. Amos' apartment or to disprove "what the people were complaining about." Horn did not witness any hand-to-hand transaction. Agent Horn then followed the defendant and initiated an investigatory stop. *171 The state asked Horn, on direct examination, what the basis for the stop was. He replied that he wanted to identify the driver of the vehicle to further the investigation of the apartment.
Based on this testimony, it appears that Agent Horn did not reach the level of reasonable suspicion required in conducting an investigatory stop at the time he turned on the flashing lights and conducted the stop. Agent Horn was unsure of any criminal activity and the specific basis articulated by Horn as the justification for the stop was to obtain the identity of the driver. Agent Horn did not articulate any basis for him to believe that the defendant was committing, had committed, or was about to commit an offense. In addition, there was no evidence presented that this area or the apartment complex was a known drug or high crime area. We, therefore, find that there was insufficient articulable facts to justify an infringement on the individual's right to be free from governmental interference.
Thereafter, the defendant was arrested for not having a valid driver's license, and, pursuant to that arrest, Agent Horn conducted a search of the defendant and found cocaine. However, the arrest and the search incident to that arrest flowed from an illegal stop. Since Agent Horn did not have reasonable suspicion to conduct an investigatory stop, the subsequent arrest and search were also invalid. Therefore, any evidence produced as a result of an illegal search and seizure is tainted and, thus, inadmissible.
We are aware that the decision to deny a motion to suppress is afforded great weight and it will not be set aside unless the preponderance of the evidence clearly favors suppression. State v. Williams, 98-1006 (La.App. 5 Cir. 3/30/99), 735 So.2d 62. We believe that, in this case, the preponderance of the evidence presented at the suppression hearing favors granting the motion to suppress. We find that the trial court committed reversible error in denying the motion to suppress the evidence and, therefore, the conviction and sentence must be set aside.
For the above discussed reasons, the denial of the motion to suppress the evidence is reversed and the conviction and sentence of the defendant are hereby vacated and set aside. The case is remanded for further proceedings.
REVERSED; VACATED AND SET ASIDE; AND REMANDED.
NOTES
[1] LSA-C.Cr.P. art. 215.1 provides in pertinent part:

A. A law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense and may demand of him his name, address, and an explanation of his actions.