979 So.2d 573 (2008)
STATE of Louisiana
v.
Mona J. MICELOTTI.
No. 07-KA-700.
Court of Appeal of Louisiana, Fifth Circuit.
February 6, 2008.
*574 Paul D. Connick, Jr., District Attorney, Twenty-Fourth Judicial District, Parish of Jefferson, Terry M. Boudreaux, Thomas J. Butler, Churita Hansell, Assistant District Attorneys, Gretna, Louisiana, for Plaintiff/Appellee.
Bruce G. Whittaker, Attorney at Law, Louisiana Appellate Project, New Orleans, Louisiana, for Defendant/Appellant.
Panel composed of Judges THOMAS F. DALEY, WALTER J. ROTHSCHILD, and FREDERICKA HOMBERG WICKER.
*575 WALTER J. ROTHSCHILD, Judge.
Defendant, Mona J. Micelotti, was charged by bill of information with possession of cocaine, a violation of LSA-R.S. 40:967(C). At her arraignment, the defendant pled not guilty. The defendant filed an omnibus motion that included a Motion to Suppress Confession, Identification, and Physical Evidence, which the trial court subsequently denied. After a one-day trial, the defendant was found guilty as charged. The defendant then filed a motion for new trial that was denied. Subsequently, the trial court imposed a sentence of two-and-one-half years at hard labor. The defendant now takes this timely appeal.
FACTS
At the motion to suppress hearing as well as at trial, Deputy Ricardo Ramos, Jr. of the Jefferson Parish Sheriffs Office testified that, on December 16, 2005, he investigated an anonymous complaint of illegal drug activity at 912 North Sibley in Metairie, Louisiana, which was the defendant's address. After the sheriff's office received the initial call, Deputy Ramos was dispatched to the complainant's address and was informed that two named people, whom she described, would be buying narcotics off of David Drive and then returning to the North Sibley address. The complainant also gave Deputy Ramos a description of the vehicle that would be used by the two individuals.
Shortly after his arrival on Sibley Street, Deputy Ramos observed a white male arrive in a small red car. The man "perfectly" matched the description given by the complainant. The red car also matched the description given by the complainant. The male passenger exited the vehicle, after which the vehicle was pulled into 912 North Sibley. The defendant drove the vehicle. She "matched perfectly" the description of the female given by the complainant. Subsequently, she exited the red car. Deputy Ramos identified the defendant in court as the female, whom he saw exiting the vehicle. Deputy Ramos ordered the defendant, Mona Micelotti, to step over to his vehicle. When he saw the white male approaching from a few doors down, Deputy Ramos ordered him to come over to his police car. At this time, Deputy Ramos noticed that the man was staggering. As Deputy Ramos questioned the man, he noticed the defendant place her hands in her pockets as she backed away from his police car. Deputy Ramos previously had ordered the defendant to keep her hands where he could see them for safety purposes, i.e., to prevent the removal and use of a weapon. In response to her actions, Deputy Ramos ordered the defendant to take her hand out of her pocket and return to her original position. As the defendant took her hand out of her pocket, Deputy Ramos saw something fall to the ground. The fallen object, an offwhite rock-like object, appeared to be a crack rock and defendant attempted to step on it. This forced Deputy Ramos to move the defendant and handcuff her before retrieving the rock. The defendant subsequently was arrested for possession of crack cocaine.
At trial, Andrea Travis, a forensic scientist with the Jefferson Parish Sheriff's Office Crime Laboratory, testified that the substance retrieved in connection with the defendant tested positive for cocaine.
DISCUSSION
By this appeal, the defendant argues that the trial court erred in denying her motion to suppress. She claims that she was not free to leave her encounter with the police. Rather, she was subject to the commands of Deputy Ramos in an ongoing detention. The defendant asserts that she was detained without reasonable suspicion or probable cause. She claims that her *576 detention was based on an anonymous tip, and that the tip was that she would be accompanied by a particular person, in a particular car, at a particular location. She contends that any innocent person could have been the subject of this kind of tip, since it lacks specificity, predictability, and corroboration of details. The defendant claims that the abandonment of the property was "improperly triggered." Therefore, the evidence seized should be suppressed.
The State responds that the tip that the police received was not anonymous. Rather, the tip was from a concerned citizen who wished to remain anonymous. In fact, Deputy Ramos met and spoke to the caller at her residence. The State contends that as a citizen informant with firsthand knowledge of the criminal activity her tip carried high indicia of credibility in the determination of probable cause. Based on the information Deputy Ramos was provided by the informant and his corroboration of the perfect descriptions given of the defendant, the passenger, and the car, the State asserts that Deputy Ramos had a sufficient legal basis to justify an investigatory stop. Furthermore, the State claims that the defendant was not under arrest until cocaine fell out of her pockets in plain view of Deputy Ramos.
The Fourth Amendment to the United States Constitution and the Louisiana Constitution Article 1, § 5 protect individuals from unreasonable searches and seizures. State v. Massey, 03-1166, p. 4 (La.App. 5 Cir. 1/27/04), 866 So.2d 965, 968. Law enforcement officers are authorized by LSA-C.Cr.P. art. 215.1, as well as state and federal jurisprudence, to perform investigatory stops, which permit officers to stop and interrogate a person who is reasonably suspected of criminal activity. State v. Gresham, 97-1158, p. 10 (La. App. 5 Cir. 4/15/98), 712 So.2d 946, 951, writ denied, 98-2259 (La.1/15/99), 736 So.2d 200; Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The Terry standard, as codified in LSA-C.Cr.P. art. 215.1, authorizes a police officer "`to stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense' and to demand that the person identify himself and explain his actions." State v. Melancon, 03-514, p. 5 (La.App. 5 Cir. 10/28/03), 860 So.2d 225, 229, writ denied, 03-3503 (La.4/23/04), 870 So.2d 297.
The reasonable suspicion necessary for an investigatory stop is something less than probable cause, and must be determined under the facts of each case by whether the officer had sufficient knowledge of the facts and circumstances to justify an infringement on the individual's right to be free from governmental interference. Melancon, 03-514 at p. 6, 860 So.2d at 229. In making an investigatory stop, the police "`must have a particularized and objective basis for suspecting the particular person stopped of criminal activity[,]'" which has been interpreted to require the police to point to specific and articulable facts to justify the investigatory stop. State v. Sims, 02-2208, p. 5 (La.6/27/03), 851 So.2d 1039, 1043. (Citations omitted.) Without reasonable suspicion, an investigatory stop is illegal and the evidence seized from that stop is suppressible. State v. Triche, 03-149, p. 6 (La.App. 5 Cir. 5/28/03), 848 So.2d 80, 84, writ denied, 03-1979 (La.1/16/04), 864 So.2d 625.
The State has the burden of establishing the admissibility of evidence seized without a warrant, in a hearing on a defense motion to suppress the evidence. LSA-C.Cr.P. art. 703(D), State v. Manson, 01-159, p. 5 (La.App. 5 Cir. 6/27/01), 791 *577 So.2d 749, 755. The Fourth Amendment does not prohibit the warrantless seizure of evidence in plain view. State v. Freeman, 97-1115, p. 5 (La.App. 5 Cir. 12/29/98), 727 So.2d 630, 634 n. 1. Therefore, an officer can seize contraband that he believes to be a controlled dangerous substance that inadvertently falls into plain view during a legal investigatory stop when there are exigent circumstances indicate that the defendant will attempt to reclaim it or possibly dispose of it before the officer can obtain a search warrant. State v. Neyrey, 383 So.2d 1222, 1225 (La. 1979).
The credibility of witnesses at a suppression hearing is within the sound discretion of the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness. State v. McGee, 04-963, p. 10 (La.App. 5 Cir. 1/11/05), 894 So.2d 398, 406, writ denied, 05-0593 (La.5/20/05), 902 So.2d 1050. A trial court's denial of a motion to suppress is afforded great weight, and it will not be set aside unless the preponderance of the evidence clearly favors suppression. State v. Gagnon, 01-1302, p. 8 (La.App. 5 Cir. 4/10/02), 817 So.2d 167, 171. (Citation omitted.)
The appellate court must consider the totality of the circumstances, while giving deference to the inferences and deductions of trained police officers that might elude an untrained person. Gagnon, 01-1302 at p. 6, 817 So.2d at 170. (Citation omitted.) The appellate court may consider the evidence adduced at the hearing on the motion to suppress, as well as all pertinent evidence given at the trial of the case, in determining whether a motion to suppress ruling was correct. State v. Roche, 05-237, pp. 7-8 (La.App. 5 Cir. 4/25/06), 928 So.2d 761, 765, writ denied, 06-1566 (La.1/8/07), 948 So.2d 120.
In the present case, both at the suppression hearing and at trial, Deputy Ramos testified that he received an anonymous call about drug activity. He conducted a face-to-face interview with the complainant. The complainant gave personal knowledge about the two individuals involved in the drug activity including their names and descriptions, the color of the vehicle they used, and the location where they purchased the illegal drugs.[1] Deputy Ramos testified that he went to the address to which the complainant told him that the suspects would return. Shortly after arriving at the location, he observed the small red car, described by the complainant, arrive with the defendant and a white male inside. The white male, described perfectly by the complainant, exited the vehicle. After exiting his vehicle, Deputy Ramos ordered the defendant over to his vehicle and told her to keep her hands out of her pockets for safety reasons. While questioning the defendant's companion, Deputy Ramos noticed the defendant step away from the police vehicle with her hand in her pocket. When Deputy Ramos ordered her to remove her hand, the defendant tossed an off-white rock-like object to the ground.[2] She immediately tried to step on the object. Deputy Ramos recognized the object as a crack rock. After Deputy Ramos removed and handcuffed the defendant, he retrieved the object that later tested positive for cocaine.
Under certain circumstances, an informants tip can provide reasonable suspicion to detain and question a person. State v. Clay, 06-37, p. 5 (La.App. 5 Cir. 4/25/06), 930 So.2d 1028, 1032. (Citations *578 omitted.) An informant's tip may create reasonable suspicion necessary to justify an investigatory stop under the totality of the circumstances. Id., 06-37 at pp. 5-6, 930 So.2d at 1032. The "totality of the circumstances approach" applied by the United States Supreme Court considers an informant's veracity, reliability and basis of knowledge as highly relevant in determining the value of an informant's tip. State v. Nelson, 02-65, pp. 6-7 (La.App. 5 Cir. 6/26/02), 822 So.2d 796, 801, writ denied, 02-2090 (La.2/21/03), 837 So.2d 627, citing Illinois v. Gates, 462 U.S. 213, 214, 103 S.Ct. 2317, 2320, 76 L.Ed.2d 527 (1983).
In State v. Charles, 95-498 (La.App. 5 Cir. 12/13/95), 666 So.2d 1147, the police received an anonymous call reporting that a black male wearing gold jeans was selling rocks of crack cocaine. The caller also gave the location of the drug transactions. As the officers approached the area, one of the officers observed two black males standing at the location given by the anonymous caller. The defendant was wearing gold jeans and a red shirt. When they saw the police car, the defendant and the other man quickly entered a nearby supermarket. As the officers reached the entrance of the supermarket, the defendant who was leaving quickly raised his hand toward his mouth. One of the officers grabbed the defendant's arm to prevent the loss of possible evidence. During the struggle, the defendant dropped two small white rock-like objects to the ground, and then the defendant stepped on them. After the defendant was restrained, the substance was field tested positive for cocaine. Then, the defendant was arrested. The trial court denied the motion to suppress finding that the police acted in response to the call about criminal activity. During the investigation, the police noticed the defendant make a motion that indicated that he was destroying the evidence. When the police seized the defendant's hand, the evidence was dropped on the ground where the police recovered it. Charles, 95-498 at pp. 3-4, 666 So.2d at 1148-49. This Court found that, although the defendant was not engaged in any kind of activity indicative of drug trafficking, the defendant fit the anonymous caller's description of the person selling drugs. The defendant was also in the specified location, an area known for drug trafficking. In addition, when the defendant raised his hand to his mouth, the police acted to prevent destruction of the evidence. This Court found that considering the totality of the circumstances, the officers had reasonable cause to make an investigatory stop of the defendant. Charles, 95-498 at pp. 5-6, 666 So.2d at 1150. This Court further noted that because the defendant discarded the drugs during the struggle when there had been no prior unlawful intrusion by the officers, the discarded evidence was lawfully seized. Id., 95-498 at p. 7, 666 So.2d at 1150-51.
We find that like the police officer in Charles, supra, Deputy Ramos' observations gave him sufficient corroboratory evidence to conduct an investigatory stop. In addition, like the defendant in Charles, supra, we find that the defendant in the present case discarded the drugs when there had been no prior unlawful intrusion by the officers. Therefore, the discarded evidence was lawfully seized. The totality of the circumstances supports the trial judge's denial of the defendant's motion to suppress.
ERROR PATENT DISCUSSION
The defendant requests an error patent review. However, this Court routinely reviews the record for errors patent in accordance with LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990) regardless of whether defendant makes such a request. The review reveals an error patent in this case.
*579 The commitment/minute entry indicates that the trial court failed to advise the defendant of the prescriptive period for filing an application for post-conviction relief. In addition, a review of the sentencing transcript also indicates that the trial judge failed to notify the defendant of the two-year prescriptive period for filing an application for post-conviction relief, as required by LSA-C.Cr.P. art. 930.8. State v. Mutz, 04-1072, p. 9 (La.App. 5 Cir. 2/15/05), 896 So.2d 1129, 1135. Therefore, we remand the case to the trial court and order the court to inform defendant of the appropriate prescriptive period for filing for post-conviction relief by sending appropriate written notice to the defendant within ten days of the rendition of this Court's opinion and by filing written proof in the record that the defendant received the notice.
CONVICTION AND SENTENCE% AFFIRMED; CASE REMANDED WITH INSTRUCTIONS.
NOTES
[1] At the suppression hearing, Deputy Ramos testified that the caller also gave the individuals' addresses.
[2] At the motion to suppress hearing, Deputy Ramos testified the defendant also dropped a glass crack pipe.