SUSAN M. CHEHARDY, Judge.
|2On November 13, 2007, the Jefferson Parish District Attorney’s Office filed an amended bill of information charging the defendant, Clarence Anderson, Jr., with possession of a firearm by a convicted felon, a violation of La. R.S. 14:95.1. At his arraignment, the defendant pled not guilty.
The defendant filed an omnibus motion, which included a “Motion to Suppress Confession, Identification, and Physical Evidence,” that the trial court subsequently denied. On November 13, 2007, this Court denied writs. State v. Anderson, 07-902 (La.App. 5 Cir. 11/13/07)(unpublished writ disposition).
After a one-day trial, the jury unanimously found the defendant guilty as charged. The defendant subsequently filed a “Motion for New Trial Alternatively Motion to Arrest the Judgment,” which the trial court denied. After the defendant waived sentencing delays, the trial judge sentenced the defendant to ten years at hard labor. The defendant takes this timely appeal.

Facts

At trial, Detective Chad Peterson of the Kenner Police Department testified that, on the morning of June 14, 2007, he was driving to work on the airport access 13road in Kenner, in an unmarked police vehicle. As he traveled, he pulled along side of an older-model Delta 88 Oldsmobile, which was in the right-hand lane.
Detective Peterson observed an African-American man driving the car. Detective Peterson saw the driver lean forward, reach down with his right hand, and pick up an object from the floorboard, while his left hand remained on the steering wheel. According to Detective Peterson, this action made him curious. Detective Peterson testified, “As the object came up, I *605 identified it as ... what appeared to me as a firearm from that distance.”
Detective Peterson testified that, next, he saw the defendant take his left hand off of the steering wheel, and while holding the gun near his chest, quickly chamber a round into the firearm. The driver then reached down with his right hand and placed the weapon on the floorboard. According to Detective Peterson, he had an unimpeded view through his vehicle’s window into the suspect’s vehicle; he could not, however, remember if the windows on the suspect’s vehicle were raised or lowered. Detective Peterson testified that the driver did not look over at him while they were driving beside each other.
Detective Peterson testified that, because of public safety concerns, he initiated a traffic stop of the vehicle by activating his emergency lights and siren. At trial, Detective Peterson identified the defendant as the man he stopped. According to Detective Peterson, after the defendant stopped his vehicle, he approached the defendant’s vehicle with his badge around his neck and his weapon drawn. He ordered the defendant to exit the vehicle with his hands in sight.
When the defendant complied and exited the vehicle, Detective Peterson attempted to handcuff the defendant and the defendant pulled away in an apparent attempt to flee. A small struggle ensued. After Detective Peterson was able to cuff the defendant, he placed the defendant under arrest. When Detective Peterson 14looked into the vehicle, he saw a semi-automatic handgun on the floorboard to the right of the driver’s seat. When Detective Peterson eventually retrieved and secured the weapon, he determined that it was operable and loaded. Detective Peterson testified that he removed both live rounds and a clip from the weapon. Six 9-millimeter rounds were in the magazine and one 9-millimeter round was in the chamber of the gun.
The defendant testified that, in the early morning hours of June 14, 2007, he loaned his Oldsmobile Delta 88 to his fiancée, Shkeitha Oliney, to go to work. Later that morning, he retrieved his vehicle from his fiancée’s worksite, returned to his house, then started towards his fiancée’s house in Kenner.
The defendant testified that he was trying to charge his fiancée’s cellular phone, while traveling on Airport Road, when the occupant of a Chevy SUV began riding beside him and looking into his vehicle. The defendant testified that he took one of his hands off of the steering wheel, in order to connect the charger, which he retrieved from the floorboard, to his fian-cée’s phone. The defendant did not feel anything else on the floorboard. As the defendant continued driving, after connecting the cellular phone to the charger, the occupant of the other vehicle put his police lights on and pulled him over.
According to the defendant, he immediately pulled over for the officer. The defendant testified that the officer ordered him to show his hands but did not order him to get out of his vehicle. The defendant testified that he identified himself to the officer and informed him that he had previously been convicted of a felony.
The defendant admitted that the officer who stopped him found a gun under the seat of his vehicle. The defendant stated that he did not know that there was a firearm in his vehicle nor was he in possession of a firearm. The defendant suggested that the officer might have mistaken his cellular phone for a gun.
|BLater in his testimony, the defendant stated that the gun found in his vehicle belonged to his fiancée. The defendant *606 testified that he did not know, prior to the incident, that his fiancée owned a gun.
Shkeitha Oliney testified that she borrowed the defendant’s car to go to work on the night before the incident. Subsequently, the defendant retrieved his vehicle from her second jobsite. Oliney testified that she tried to call the defendant from work to inform him that her firearm was in his vehicle because she knew he was a convicted felon. Oliney testified that, when she attempted to call the defendant to tell him about the firearm, the defendant answered but then the phone went dead. There was no signal when she tried to call back.
Oliney stated that the defendant did not know that she had left a firearm in his vehicle. Oliney testified that the firearm was in the defendant’s vehicle because she had taken her gun for protection on her way to work earlier that morning. Oliney testified that, on the date of the incident, the defendant did not know she owned a firearm. Oliney testified that she collects firearms as a hobby.
In his first assignment of error, defendant contends that the State did not present sufficient evidence to support his conviction. The defendant argues that the State failed to prove that he was in actual or constructive possession of the firearm with the intent to commit the crime. He also specifically argues that Detective Peterson did not have “probable cause to conduct an investigatory stop of the Anderson’s vehicle.”
The State responds that the defendant admitted that a loaded weapon was found on the floorboard of his car. The State notes that the twelve-member jury made a credibility assessment when it rejected the defendant’s testimony that Detective Peterson saw him charging his cell phone, not chambering a round in a |ngun and his claim that he did not know that the firearm, which purportedly belonged to his fiancée, was in his vehicle.
The standard for appellate review of the sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560; State v. Lee, 02-704 (La.App. 5 Cir. 12/30/02), 836 So.2d 589, 592, writ denied, 03-0535 (La.10/17/03), 855 So.2d 755. All evidence, both direct and circumstantial, must be sufficient to support the conclusion that the defendant is guilty beyond a reasonable doubt. Id.
In order to convict a defendant of illegal possession of a firearm by a convicted felon, the State must prove beyond a reasonable doubt that the defendant had (1) possession of a firearm; (2) a conviction of an enumerated felony; (3) an absence of the ten-year statutory period of limitation; and (4) the general intent to commit the offense. La. R.S. 14:95.1; State v. Lee, 836 So.2d at 593.
Constructive possession is sufficient to satisfy the possession element of La. R.S. 14:95.1. Actual possession of a firearm is not necessary. State v. Lee, 836 So.2d at 593. An individual is in constructive possession of a thing if it is subject to his dominion and control. Id. An individual’s dominion over a weapon constitutes constructive possession even if it is only temporary in nature and even if control is shared. Id.
The defendant’s mere presence in an area where a firearm was found does not necessarily establish possession. State v. Gordon, 00-1013 (La.App. 5 Cir. 11/27/01), 803 So.2d 131, 143, twits denied, 02-0362 (La.12/19/02), 833 So.2d 336 and *607 02-209 (La.2/14/03), 836 So.2d 134. The State must prove that the offender was aware that a firearm was in his presence and that the offender had the |7general criminal intent to possess the weapon. State v. Lee, 836 So.2d at 693. The defendant’s guilty knowledge may be inferred from the circumstances. State v. Gordon, 803 So.2d at 143.
In State v. Lee, supra, the defendant was convicted of possession of a firearm by a convicted felon. State v. Lee, 836 So.2d at 591. In Lee, the driver of the vehicle testified that he saw the defendant take two guns from under his shirt and put them on the vehicle’s floorboard. In addition, the officers both testified that they saw the defendant duck down in the passenger seat when he spotted their police car. One of the officers discovered the guns on the floorboard, in plain view, on the front passenger side of the vehicle immediately after the defendant exited the passenger seat.
This Court noted that, even excluding the driver’s testimony, there was a strong inference that the defendant bent over in an attempt to hide the weapons when he saw he was the subject of a traffic stop. In addition, a gun holster found on the defendant perfectly fit one of the guns found on the floorboard. State v. Lee, 836 So.2d at 593. This Court found that there was sufficient evidence under the Jackson standard to prove the charge of possession of a firearm by a convicted felon. State v. Lee, 836 So.2d at 593-94.
In this case, Detective Peterson testified that he observed the defendant lean forward and reach down with his right hand to pick up an object off the ground, while his left hand remained on the steering wheel. As the defendant raised the object, Detective Peterson identified it as a firearm. Then, Detective Peterson saw the defendant take his left hand off of the steering wheel, draw the gun towards the middle of his chest, and quickly chamber a round into the firearm before reaching down again. Detective Peterson testified that he had an unimpeded view into the defendant’s vehicle.
| sConversely, the defendant claimed that he did not know that there was a firearm in his vehicle when Detective Peterson stopped him. He told the jury that he was attempting to connect his cell phone to its charger. Further, Shkeitha Oliney, defendant’s fiancée, testified that she was a novice firearm collector and the gun from defendant’s car belonged to her. Ms. Oli-ney stated that she was carrying the weapon because she was traveling to work in an area that is not safe at 2:00 in the morning. She also unequivocally stated that defendant did not know that the weapon was in his car. She contended that she was attempting to contact the defendant about the weapon as he was being stopped by the police.
When the trier-of-fact is confronted by conflicting testimony, the determination of that fact rests solely with the jury, who may accept or reject, in whole or in part, the testimony of any witness. State v. Lee, 836 So.2d at 593. It is not the function of the appellate court to assess the credibility of witnesses or reweigh the evidence. Id.
We will not assess the credibility of witnesses or reweigh the evidence on appeal. Therefore, viewing the evidence in the light most favorable to the prosecution, the jury did not err in finding, beyond a reasonable doubt, that the defendant was in actual possession of a weapon when the officer saw him holding the gun.
Next, defendant specifically argues that Detective Peterson did not have “probable cause to conduct an investigatory stop of the Anderson’s vehicle.” Al *608 though defendant did not provide further support for his • claim, we will review whether the officer had reasonable suspicion to conduct an investigatory stop.
The Fourth Amendment to the United States Constitution and Louisiana Constitution Article 1, § 5 protect individuals from unreasonable searches and seizures. State v. Micelotti, 07-700 (La.App. 5 Cir. 2/6/08), 979 So.2d 573, 576. |nLaw enforcement officers are authorized by La. C.Cr.P. art. 215.1, as well as state and federal jurisprudence, to perform investigatory stops to interrogate a person who is reasonably suspected of criminal activity. Terry v. Ohio, 892 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State v. Micelotti, supra.
During a Terry stop, as codified in La.C.Cr.P. art. 215.1, a police officer is authorized to stop an individual in a public place whom the officer reasonably suspects is committing, has committed, or is about to commit a crime. State v. Micelotti, 979 So.2d at 576. The officer can demand that individuals give their identity and explain their actions. Id.
Reasonable suspicion necessary for an investigatory stop is something less than probable cause. Id. Whether a police officer had sufficient knowledge of the facts and circumstances to justify an infringement on the individual’s right to be free from governmental interference must be determined by the facts of each case. Id.
A police officer must have a particularized and objective basis for suspecting the particular person that is stopped has been connected with criminal activity, in order to make an investigatory stop. State v. Micelotti, 979 So.2d at 576. A particularized and objective basis for suspecting the individual of criminal activity requires the officer to point to specific and articulable facts that justify the investigatory stop. Id.
The police, however, do not have to observe what they know to be criminal behavior before investigating. State v. Ayche, 07-753 (La.App. 5 Cir. 3/11/08), 978 So.2d 1143, 1149(citing State v. Benjamin, 97-3065 (La.12/1/98), 722 So.2d 988, 989). Rather, the requirement is that the officers have a reasonable suspicion of criminal activity. Id.
|inAn investigatory stop is illegal without reasonable suspicion, and the evidence seized from that stop is suppressible. State v. Micelotti 979 So.2d at 576. “The credibility of witnesses at a suppression hearing is within the sound discretion of the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness.” State v. Micelotti, 979 So.2d at 577. A trial court’s denial of the defendant’s motion to suppress is afforded great weight, and it will not be set aside unless the preponderance of the evidence clearly favors suppression. Id.
An appellate court must consider the totality of the circumstances, while giving deference to the inferences and deductions of trained officers that might elude an untrained person. Id. In determining whether a motion to suppress ruling was correct, an appellate court may consider the evidence adduced at the motion to suppress hearing, as well as all pertinent evidence presented at the trial. Id.
In the present case, Detective Peterson, a law enforcement officer with approximately 10 years experience, observed the defendant chambering a round into a firearm while driving with no hands on the wheel. Detective Peterson testified that, although he did not witness the defendant committing a specific crime, he stopped *609 the defendant to investigate because “[he] did not know if a crime had been committed or was about to be committed.”
We cannot say that the trial court erred in finding that Detective Peterson had sufficient reasonable suspicion that a crime was being committed, had been committed, or was about to be committed to justify an investigatory stop. Detective Peterson did not have to observe what he knew to be criminal behavior before investigating but rather behavior he reasonably suspected may become criminal activity.
| ^Finally, as is our practice, we have reviewed the record for errors patent, according to La.C.Cr.P. art. 920. See also State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990). Our review reveals that the sentencing transcript indicates that the trial judge sentenced the defendant to ten years for the charged offense and six months in parish prison for a misdemeanor offense tried simultaneously with this charge. The trial judge ordered the sentences to run consecutively to each other. In fact, the trial judge stated twice that the defendant’s sentences were to run consecutively to each other. However, the hard labor commitment states that the sentences are to run concurrently to each other. Generally, when there is a discrepancy between the minutes and the transcript, the transcript prevails. State v. Lynch, 441 So.2d 732, 734 (La.1983). Therefore, we remand this matter with instructions to the trial judge to amend the commitment/minute to conform to the transcript. State v. Manson, 94-625 (La. App. 5 Cir. 1/18/95), 650 So.2d 327, 330. Based on the foregoing, we affirm the defendant’s conviction and sentence and remand for correction of the commitment as ordered.

AFFIRMED; REMANDED WITH INSTRUCTIONS.