HILLARY J. CRAIN, Judge Pro Tem.
 

 |2On November 10, 2008, the St. John the Baptist Parish District Attorney filed a bill of information charging defendant, Brandon Dickerson, with possession of a firearm by a convicted felon in violation of LSA-R.S. 14:95.1. At the January 22, 2009 arraignment, defendant pled not guilty. Thereafter, defendant filed a motion to suppress evidence which, after a hearing, was denied by the trial judge.
 

 The bill of information was then amended to charge defendant with attempted possession of a firearm by a convicted felon in violation of LSA-R.S. 14:27 and LSA-R.S. 14:95.1. Defendant was re-arraigned and pled guilty to the amended charge on April 21, 2010, pursuant to
 
 State v. Crosby,
 
 338 So.2d 584 (La.1976). In accordance with the plea agreement, the trial judge sentenced defendant to five years imprisonment with the Department of Corrections. Defendant now appeals.
 

 
 *175
 

 ASSIGNMENT OF ERROR NUMBER ONE
 

 In his first assigned error, defendant challenges the trial court’s denial of his motion to suppress evidence. Defendant specifically argues that the deputies lacked reasonable suspicion to conduct a stop and further lacked probable cause to |sarrest him when he was trying to enter his apartment. In response, the State argues that the weapon was concealed, which prompted the legal stop and frisk pursuant to LSA-C.Cr.P. art. 215.1.
 

 Deputy Keith Carroll of the St. John Parish Sheriffs Office testified at both the preliminary examination hearing and the suppression hearing regarding the circumstances surrounding the stop of defendant and the seizure of the weapon from him.
 

 Officer Carroll testified that on October 8, 2008, sometime between 12:00 arid 2:00 p.m., he was patrolling in a marked unit in the 1200 block of Cambridge when he observed a burgundy suburban pull over. He then saw defendant exit the passenger side of the vehicle and walk to the nearby apartment complex. Deputy Carroll stated that when defendant got out of the vehicle, he observed defendant pulling up his pants, at which time the officer saw “the back-end like of a grip of a gun and like a metal slide.” Officer Carroll, who was about twenty feet from defendant, also observed defendant pulling his shirt over the gun.
 

 At this point, Officer Carroll advised his partner and driver of the marked unit, Juan Navarro, of what he had seen. The officers then pulled over into the driveway, and when defendant noticed them, he tried to run into the apartment, but the door was locked. Deputy Carroll said that their weapons were drawn and they ordered him to get on the ground. According to Deputy Carroll, their weapons were drawn because when they ordered defendant to stop, he grabbed for his shorts. In addition, the officers ordered defendant to put his hands up, and he did not comply. Deputy Carroll said that defendant got on the ground and laid on his right side where the gun was on his person. They ordered defendant to get on his stomach and to place his hands out. Deputy Carroll’s partner got the gun, which was loaded, off of defendant’s side, and defendant was handcuffed.
 

 14Peputy Carroll testified that defendant was detained for having the weapon, but that after they retrieved the weapon from him, they “ran his name” and learned he had two fugitive warrants. He was advised of his rights on the scene and then again at jail. Deputy Carroll testified that they learned he had a felony conviction after they got to jail. Defendant made a statement at jail and said he needed the gun for his protection because people were “out to kill him.”
 

 After considering the evidence and arguments of counsel, the trial court, on December 17, 2009, issued a written judgment denying defendant’s motion to suppress evidence. The court found that the deputy had a reasonable belief that defendant was in possession of a concealed weapon, noting that it was a violation of LSA-R.S. 14:95 to carry a concealed weapon.
 

 Defendant now challenges this denial claiming that the deputies lacked reasonable suspicion to conduct a stop and lacked probable cause to arrest him when he was trying to enter his apartment. Defendant argues that regardless of whether the officers’ actions of drawing their weapons, ordering defendant to stop, and handcuffing him constituted an investigatory stop or an arrest, the evidence should be suppressed. Defendant alleges that an officer cannot reasonably suspect someone of committing the crime of carrying a con
 
 *176
 
 cealed weapon when the weapon is not concealed and cannot use such suspicion to justify an investigatory stop, detention, or arrest. Defendant contends that the only basis for arrest in this case was a potential concealed weapon charge and that because the gun was in plain view and sufficiently exposed to reveal its identity, the gun did not fall within the definition of a concealed weapon. For the reasons that follow, we find no merit to defendant’s arguments.
 

 The Fourth Amendment to the United States Constitution and Article I, § 5 of the Louisiana Constitution prohibit unreasonable searches and seizures. If | r,evidence is derived from an unreasonable search or seizure, the proper remedy is exclusion of the evidence from trial. War-rantless searches and seizures are per se unreasonable unless justified by one of the exceptions to the warrant requirement.
 
 State v. Leonard,
 
 06-361 (La.App. 5 Cir. 10/81/06), 945 So.2d 764, 765.
 

 In a hearing on a motion to suppress, the State bears the burden of proof in establishing the admissibility of evidence seized without a warrant. LSA-C.Cr.P. art. 703(D). The trial court’s decision to deny a motion to suppress is afforded great weight and will not be set aside unless the preponderance of the evidence clearly favors suppression.
 
 State v. Savoie,
 
 09-103 (La.App. 5 Cir. 5/12/09), 15 So.3d 207, 212,
 
 writ denied,
 
 09-1306 (La.2/5/10), 27 So.3d 297.
 

 The right of law enforcement officers to stop and interrogate those reasonably suspected of engaging in criminal activity is recognized by LSA-C.Cr.P. art. 215.1, as well as by State and federal jurisprudence.
 
 Terry v. Ohio,
 
 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968);
 
 State v. Belton,
 
 441 So.2d 1195, 1198 (La.1983),
 
 cert. denied,
 
 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984). The
 
 Terry
 
 standard, as codified in LSA-C.Cr.P. art. 215.1, authorizes police officers to stop a person in a public place whom they reasonably suspect is committing, has committed, or is about to commit an offense and demand that the person identify himself and explain his actions.
 
 State v. Ayche,
 
 07-753 (La.App. 5 Cir. 3/11/08), 978 So.2d 1143, 1148,
 
 writs denied,
 
 08-2291 (La.1/30/09), 999 So.2d 752 and 08-1115 (La.2/13/09), 999 So.2d 1140.
 

 In determining whether the police possessed the requisite minimal level of objective justification for an investigatory stop based on reasonable suspicion of criminal activity, reviewing courts must look at the totality of the circumstances of each case, a process which allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative | information available to them that might well elude an untrained person.
 
 State v. Boyer,
 
 07-0476 (La.10/16/07), 967 So.2d 458, 469-70. Police do not have to observe what they know to be criminal behavior before investigating. The requirement is that the officers have a reasonable suspicion of criminal activity.
 
 State v. Benjamin,
 
 97-3065 (La.12/1/98), 722 So.2d 988, 989. Reasonable suspicion is something less than probable cause to arrest. Rather, it requires that officers have sufficient knowledge of the facts and circumstances to justify an infringement of an individual’s right to be free of government interference.
 
 State v. Massey,
 
 03-1166 (La.App. 5 Cir. 1/27/04), 866 So.2d 965, 968.
 

 An officer’s mere unparticular-ized suspicion or “hunch” of criminal activity is insufficient to establish reasonable grounds to stop a person.
 
 State v. Burns,
 
 04-175 (La.App. 5 Cir. 6/29/04), 877 So.2d 1073,1076. Factors that may support reasonable suspicion for an investigatory stop include an officer’s experience, his knowledge of recent criminal patterns, and his knowledge of an area’s frequent incidents
 
 *177
 
 of crime. Nervous, evasive behavior is a pertinent factor in determining reasonable suspicion.
 
 State v. Ayche,
 
 978 So.2d at 1149. In
 
 State v. Morton,
 
 08-164 (La.App. 5 Cir. 7/29/08), 998 So.2d 651, 656, this Court recognized that when evaluating the totality of circumstances, a defendant’s evasive conduct in response to police presence is a factor that is accorded significant weight.
 

 In the present case, we find that the deputies had reasonable suspicion to justify an investigatory stop of defendant after observing the grip of a gun in defendant’s waistband and then observing defendant’s behavior after noticing the deputies.
 

 In
 
 State v. Patterson,
 
 588 So.2d 392, 394 (La.App. 4 Cir.1991), the defendant was convicted of being a convicted felon in possession of a firearm. The officers were in an unmarked police vehicle when they saw the defendant and |7another man sitting on the steps of a house that one of the officers knew was abandoned. When the defendant observed the officers’ car, he became fidgety, got up, walked toward an alley, pulled a gun from his waistband, and threw it under the house. The gun was retrieved while another officer detained the defendant. The
 
 Patterson
 
 court agreed with the defendant that mere nervousness or flight is insufficient for reasonable suspicion. However, it explained that the case involved more than “fidgety” actions because one of the officers saw the butt of a gun in the defendant’s waistband. The court determined that “[a]ll of the officers testified that even before the vehicle was pulled over the defendant was fumbling with his waistband. Given this testimony, it appears that the officers had reasonable cause for an investigatory stop.”
 
 State v. Patterson,
 
 588 So.2d at 396.
 

 In
 
 State v. Anderson,
 
 08-456 (La.App. 5 Cir. 1/13/09), 8 So.3d 602, after the defendant was convicted of possession of a firearm by a convicted felon, this Court reviewed whether the officer had reasonable suspicion to conduct an investigatory stop. At trial, it was established that the officer was driving to work in an unmarked police vehicle one morning when he pulled up on the side of the vehicle the defendant was driving. The officer observed the defendant chambering a round into a firearm while driving with no hands on the wheel. The officer testified that even though he had not witnessed the defendant committing a specific crime, he stopped the defendant to investigate because he did not know if a crime had been committed or was about to be committed. In
 
 Anderson,
 
 8 So.3d at 609, this Court concluded the following:
 

 We cannot say that the trial court erred in finding that Detective Peterson had sufficient reasonable suspicion that a crime was being committed, had been committed, or was about to be committed to justify an investigatory stop. Detective Peterson did not have to observe what he knew to be criminal behavior before investigating but rather behavior he reasonably suspected may become criminal activity.
 

 |sBased on the foregoing, we find that the officers had reasonable suspicion to conduct an investigatory stop after viewing the grip of a gun in defendant’s waistband and then seeing defendant try to run into the apartment after noticing the officers. Moreover, there was reasonable suspicion to believe defendant was committing an offense or about to commit an offense of concealing a weapon.
 

 Defendant seems to suggest that the gun was not concealed and was in plain view. However, at the suppression hearing, Deputy Carroll testified that at one
 
 *178
 
 point the gun was concealed and covered by defendant’s shirt. It is irrelevant to our determination of reasonable suspicion that the gun was not concealed when initially observed, but then was concealed by defendant with his clothing.
 

 In
 
 State v. Forest,
 
 553 So.2d 935, 935-36 (La.App. 4 Cir.1989), the defendant pled guilty to being a convicted felon in possession of a firearm, reserving his right to contest the motion to suppress ruling under
 
 State v. Crosby.
 
 The defendant was arrested for carrying a concealed weapon and then later a computer check revealed a prior conviction. The officer in
 
 Forest
 
 was patrolling with his partner when he observed four subjects at around midnight standing in front of a bar at a place the officer described as a “known drug corner.” The officer saw what he thought was a handle of a small gun sticking out of the defendant’s right front pocket. The officer stopped his vehicle and detained the individuals. The court considered the issue of whether the initial stop of the defendant by the officers was based on reasonable suspicion that the defendant was carrying a weapon he intended to conceal. In
 
 Forest,
 
 the court decided that the only reasonable hypothesis supported by this evidence was that the defendant intended to have the weapon concealed and he accidentally allowed part of the weapon to be exposed. The court explained that it was unreasonable to assume |flthat this convicted felon intended to advertise that he was carrying a weapon at that time. The
 
 Forest
 
 court concluded there was probable cause for the arrest and the motion to suppress was properly denied.
 

 In the present case, Deputy Carroll testified that when defendant got out of the vehicle, he observed defendant pulling up his pants, at which time the officer saw the grip of a gun in defendant’s waistband. He further testified that defendant was trying to fix his shirt over the gun as he walked to the apartment complex. After noticing the officers, defendant tried to run into an apartment, but the door was locked. Given the circumstances of this case and in light of the jurisprudence discussed herein, we find that the officers had reasonable suspicion to justify an investigatory stop of defendant.
 

 Further, we find that the officers’ actions in drawing them weapons and handcuffing defendant did not elevate the encounter from an investigatory stop to an arrest. In
 
 State v. Morton,
 
 993 So.2d at 657, this Court recognized that since police officers should not be required to take unnecessary risks in performing their duties, they are authorized to take such steps as are reasonably necessary to protect their safety and to maintain the status quo during the course of a
 
 Terry
 
 stop. In
 
 Morton,
 
 this Court discussed the law regarding when the use of arrest-like features escalates an investigatory stop into an arrest requiring probable cause:
 

 Inherent in the right of police to conduct a brief investigatory detention is also the right to use reasonable force to effectuate the detention. There is no question that the use of handcuffs incrementally increases the degree of force that is used in detaining an individual. However, arrest-like features such as the use of drawn weapons and handcuffs may, but do not invariably, render the seizure a de facto arrest. Therefore, when the State seeks to prove that an investigatory detection involving the use of handcuffs did not exceed the limits of a
 
 Terry
 
 stop, the State must show some specific fact or circumstance that could have supported a reasonable belief that the use of restraints was necessary to carry out the legitimate purpose of the stop without exposing law enforcement officers, the public, or the suspect him
 
 *179
 
 self to an undue risk of harm. If the added intrusion is not |inwarranted under particular circumstances, a
 
 Terry
 
 stop may escalate into a de facto arrest requiring probable cause to render it valid.
 
 State v. Porche,
 
 06-0312 (La.11/29/06), 943 So.2d 335, 339-340.
 
 See also State v. Broussard,
 
 00-3230 (La.5/24/02), 816 So.2d 1284, 1286-1287.
 

 In the present case, defendant was observed with a gun, and when defendant noticed the deputies, he tried to get into an apartment. Under these circumstances, the officers were authorized to use reasonable force to effectuate defendant’s detention, including drawing their weapons and handcuffing defendant. Even though defendant was handcuffed after the gun was removed from his waistband, it appears reasonable that the deputies could have believed that defendant might have had another weapon on his person or could try to flee. In fact, defendant tried to flee into the apartment after noticing the deputies, and he also initially did not comply with the officers’ demands. For the protection of the officers and whoever may have been in the apartment complex, the handcuffing of defendant was a necessary safety precaution that was justified in effectuating the detention. Once it was learned that there were two fugitive warrants for defendant, the officers had probable cause to arrest him.
 

 Based on the foregoing discussion, we find that the trial court did not err in denying defendant’s motion to suppress evidence. Accordingly, the arguments raised by defendant in this assigned error are without merit.
 

 ASSIGNMENT OF ERROR NUMBER TWO
 

 In his second assigned error, defendant argues that his guilty plea was invalid because the trial judge failed to advise him of the correct sentencing range and failed to advise him that the sentence was required to be imposed without benefit of parole, probation, or suspension of sentence.
 

 With regard to the correct sentencing range, defendant argues that there was no minimum penalty for the attempted offense, but he was told there was a | nmandatory minimum penalty of five years and a maximum penalty of seven and one-half years. He argues that the trial court was unaware of the correct sentencing range when sentencing defendant to five years, a sentence the judge believed was the mandatory minimum. He argues that the incorrect minimum penalty is also reflected in the waiver of rights form. As part of his argument, defendant further contends that the form failed to notify him that the sentence was required to be imposed without benefits. He argues his plea should be set aside because he entered into a plea agreement without knowing all of the ramifications of his plea.
 

 The State responds that the penalty range was incorrect and suggests that the matter be remanded to the trial court for resentencing. However, as shown by the following discussion, a remand for resen-tencing is not warranted in this case.
 

 Defendant pled guilty to attempted possession of a firearm by a convicted felon. At the time of defendant’s offense on October 8, 2008, LSA-R.S. 14:95.1(B) provided for a sentence of imprisonment at hard labor for not less than ten nor more than fifteen years without the benefit of probation, parole, or suspension of sentence and a mandatory fine of not less than one thousand dollars nor more than five thousand dollars. LSA-R.S. 14:27(D)(3) provided, at the time of the offense, that a person convicted of an attempted offense “shall be fined or imprisoned or both, in the same manner as for the offense at
 
 *180
 
 tempted; such fíne or imprisonment shall not exceed one-half of the largest fíne, or one-half of the longest term of imprisonment prescribed for the offense so attempted, or both.”
 

 As such, defendant faced a maximum sentence of seven and one-half years. At the time of the offense, the attempt statute did not require a minimum penalty, even though one was required for the completed offense.
 
 See State v. Chandler,
 
 09-1286 (La.App. 3 Cir. 5/5/10), 36 So.3d 1086, 1088. However, the waiver of rights form and the transcript of the guilty plea colloquy reflect that defendant was | ^advised he faced a mandatory minimum penalty of not more than one-half of ten years and a maximum possible penalty of not more than one-half of fifteen years.
 

 In this assignment, defendant also complains because the trial court failed to advise him that the sentence was required to be served without benefits. The penalty provision for possession of a firearm by a convicted felon mandated imposition of the statutory restrictions. The attempt statute pertinently provides that whoever attempts to commit a crime shall be punished in the same manner as for the offense attempted. Therefore, the defendant’s sentence for attempted possession of a firearm by a convicted felon in this case required imprisonment without benefit of probation, parole, or suspension of sentence.
 
 State v. Smith,
 
 08-528 (La. App. 5 Cir. 1/13/09), 1 So.3d 802, 803-804. The waiver of rights form and the transcript of the guilty plea colloquy do not reflect that defendant was advised of the restriction of benefits. Defendant’s sentence was not imposed with restriction of benefits.
 
 [1]
 

 Defendant now contends that his guilty plea is invalid and should be set aside because he entered into a plea agreement without knowing all of the ramifications of his plea. For the reasons that follow, we find no merit to defendant’s argument.
 

 LSA-C.Cr.P. art. 556.1(A)(1) provides that, prior to accepting a guilty plea, the court must personally inform the defendant of the nature of the charge to which the plea is offered, any mandatory minimum penalty and the maximum possible penalty. Violations of LSA-C.Cr.P. art. 556.1 that do not rise to the level of
 
 Boy-kin
 
 violations are subject to harmless error analysis.
 
 State v. Guzman,
 
 99-1528 and 99-1753 (La.5/16/00), 769 So.2d 1158, 1164-66;
 
 State v. Gilliam,
 
 01-748 (La. App.13 5 Cir. 1/15/02), 807 So.2d 1024, 1027,
 
 writ denied,
 
 02-0512 (La.11/1/02), 828 So.2d 562. The Louisiana Supreme Court has clearly held that the core
 
 Boykin
 
 constitutional requirements have never been extended to include advice with respect to sentencing.
 
 State v. Guzman,
 
 769 So.2d at 1164. In determining whether a violation of Article 556.1 is harmless, the inquiry is whether the defendant’s knowledge and comprehension of the full and correct information would have likely affected his willingness to plead guilty.
 
 State v. Gilliam,
 
 807 So.2d at 1027.
 

 In
 
 State v. Andrews,
 
 33,079-33,082 (La. App. 2 Cir. 3/1/00), 755 So.2d 361, the defendant was charged with distribution of cocaine in four separate cases and pled guilty to charges of attempted distribution of cocaine pursuant to a plea agreement in which the State agreed to the reduced
 
 *181
 
 charges and agreed that the sentences would be served concurrently. The court accepted the guilty pleas and sentenced the defendant. The
 
 Andrews
 
 opinion does not reflect that a specific sentence was agreed to. In fact, on appeal, the defendant argued that his sentence was excessive. The court noted on error patent review that the trial court erred in advising the defendant that the minimum sentencing exposure he faced was two and one-half years at hard labor when there was no statutory mandatory minimum sentence in cases involving attempted drug offenses. The
 
 Andrews
 
 court concluded that under the circumstances, the court’s misstatement was harmless error and did not warrant any corrective action relative to the guilty plea or sentence.
 

 In
 
 State v. Broadway,
 
 40,569 (La.App. 2 Cir. 1/25/06), 920 So.2d 960, 963, the defendant argued that his guilty plea was involuntary because the court erred in failing to adequately apprise him of the sentencing range for the attempt crime to which he pled guilty. The Second Circuit noted that advice regarding sentencing 114exposure was not part of the core
 
 Boy-kin
 
 requirements and that moreover, the court advised the defendant of the agreed sentence, which satisfied the notice requirement of LSA-C.Cr.P. art. 556.1.
 

 In
 
 State v. Shelton,
 
 09-713 (La.App. 5 Cir. 3/9/10), 39 So.3d 601, the defendant argued that she should be allowed to withdraw her guilty plea because she was unaware prior to entering the plea that the law required the first two years of her sentence to be served without benefits. This Court noted that the court did not explicitly order the restriction of benefits for the first two years but explained that the restrictions were self-operating. This Court further explained that the Louisiana Supreme Court has ruled that courts may look beyond the guilty plea colloquy to an expanded record to determine whether a voluntary waiver of rights occurred. This Court determined that although the waiver of rights form did not specifically say the sentence would be without statutory benefits as to the first two years, the form did state that the restrictions were part of the maximum sentence allowed under the statute. This Court also noted that the defendant received a favorable plea bargain. This Court found that it did not believe that this appeared to have been a material factor affecting the defendant’s decision to plead guilty. Additionally, this Court concluded that the record showed that the defendant was thoroughly advised of her
 
 Boykin
 
 rights by the court and her attorney and that having found the guilty plea was knowing and voluntary, there were no constitutional grounds upon which to allow the defendant to withdraw her plea.
 

 Any variance from the procedure required by Article 556.1 that does not affect the substantial rights of the accused shall not invalidate the plea. LSA-C.Cr.P. art. 556.1(E). In the present case, the waiver of rights form reflects that defendant knew he was pleading guilty to attempted possession of a firearm after being convicted of a felony. He indicated that he understood the nature of the |1scrime and that he faced a maximum penalty of not more than one-half of fifteen years. Defendant indicated that he understood that by pleading guilty he was waiving his right to plead not guilty and choose a trial by judge or jury, his right to confrontation, and his right to remain silent. He also indicated he was satisfied with how his counsel and the court had handled the case. The form also reflected that in accordance with the plea agreement he would be sentenced to 'five years with the “DOC.” Defendant also indicated that he was not forced, coerced, threatened, or promised anything in exchange for his plea. He indicated he understood the pen
 
 *182
 
 alty and the possible legal consequences of pleading guilty and wished to plead guilty. Also, defendant indicated that his attorney read and explained the agreement to him in its entirety. The form was signed by defendant, his counsel, the judge, and the district attorney.
 

 Further, during the colloquy, the transcript indicates that the trial judge addressed defendant’s educational background and asked defendant if he had any questions or difficulty filling out the form. Defendant indicated that he was not under the influence of drugs or alcohol at the time and did not know of any mental or physical impairments he had. The trial judge explained the offense and stated what the mandatory minimum penalty and the maximum penalty would be. The judge indicated, although mistakenly, that the minimum penalty was one-half of ten years. He also advised defendant that the maximum penalty was one-half of fifteen years. He was advised of his
 
 Boykin
 
 rights and indicated he understood the rights he was waiving. During the colloquy, defendant also indicated that he had discussed sentencing with his attorney. He indicated that he was not forced, threatened, or coerced, and that he had no questions. The trial judge then accepted his plea.
 

 |1fiIn the present case, defendant was thoroughly advised of his
 
 Boykin
 
 rights, and the record indicates that his plea was knowingly and voluntarily made. Further, defendant received a favorable plea bargain, and the sentence imposed was in accordance with the plea agreement. Accordingly, we find that the failure to properly advise defendant of the minimum sentence he faced and of the mandatory restriction of benefits was harmless error.
 

 Based on the foregoing discussion, this assigned error is without merit.
 

 ERROR PATENT DISCUSSION
 

 The record was reviewed for errors patent, according to LSA-C.Cr.P. art. 920;
 
 State v. Oliveaux,
 
 312 So.2d 337 (La.1975);
 
 State v. Weiland,
 
 556 So.2d 175 (La.App. 5 Cir.1990). Our review reveals no errors that require corrective action.
 

 Accordingly, for the reasons set forth herein, defendant’s conviction and sentence is hereby affirmed.
 

 CONVICTION AND SENTENCE AFFIRMED.
 

 [1]
 

 . Although the trial judge failed to specify that the sentence was to be served without benefit of parole, probation, or suspension of sentence, under LSA-R.S. 15:301.1 and
 
 State v. Williams,
 
 00-1725 (La.l 1/28/01), 800 So.2d 790, the sentence is deemed to contain these restrictions without corrective action.
 
 See State v. Mourra,
 
 06-133 (La.App. 5 Cir. 8/29/06), 940 So.2d 29, 33 n. 5.