646 So.2d 338 (1994)
STATE of Louisiana
v.
Andrew HARPER.
No. 93-K-2682.
Supreme Court of Louisiana.
November 30, 1994.
*339 Kevin V. Boshea, Martin E. Regan, Jr., Thomas M. Calogero, New Orleans, for applicant.
Richard P. Ieyoub, Atty. Gen., John M. Mamoulides, Dist. Atty., Dorothy A. Pendergast, Asst. Dist. Atty., Louise S. Korns, for respondent.
MARCUS, Justice.[*]
Andrew Harper was charged by bill of information with distribution of a controlled dangerous substance, to wit, cocaine, in violation of La.R.S. 40:967(A). After trial by jury, defendant was found guilty as charged. The trial judge sentenced defendant to imprisonment at hard labor for a term of thirty years with credit for time served and ordered the sentence to run consecutively with a ten year sentence imposed in another proceeding. The court of appeal affirmed defendant's conviction and sentence.[1] Upon defendant's application, we granted certiorari to consider the correctness of that decision.[2]
On October 18, 1990, Lieutenant John Thevenot of the Jefferson Parish Sheriff's Office coordinated an investigation into alleged drug activity of a suspect known only as "Boo" or "Bootie," who was allegedly distributing narcotics in front of 921 North Claiborne Parkway on the west bank in Westwego. He instructed Agent Cory Wilson, an undercover agent, to go to that residence with a confidential informant in an effort to make a purchase of crack cocaine. Wilson *340 was given one hundred dollars to make the purchase.
At approximately 1:45 on the afternoon of October 18, Wilson travelled to the area, accompanied by a cover team consisting of Thevenot, Agent Rob Lore, Agent Wilkie Declouet and two other officers. Wilson was instructed by Thevenot to go in with the confidential informant to purchase narcotics. Wilson first saw the suspect outside of his residence working on his vehicle. The suspect introduced himself as "Bootie." Wilson asked him for six rocks of crack cocaine. The suspect went into the residence and returned with six rocks of crack cocaine, advising Wilson they would cost one hundred dollars. Wilson gave him the money and the suspect handed him the drugs. Upon completing the buy, Wilson met with Agent Lore and turned all the evidence over to him. After returning to the office, Lore identified the individual named "Bootie" as defendant, Andrew Harper, and obtained a photograph of him. The next day, Wilson identified this photograph as being that of the suspect who introduced himself as "Bootie" and sold him the six rocks of cocaine.
At trial, Wilson identified defendant as the person from whom he made the drug purchase on October 18, 1990. He testified he was face to face with defendant for approximately three minutes in the daylight and had no difficulty seeing his face. Agent Lore testified that he had made a drug purchase from defendant in January, 1990 and knew for a fact that defendant was nicknamed "Bootie." Agent Declouet identified defendant at trial as the man he saw speaking with Agent Wilson in front of the residence, although he admitted he did not see the transaction take place.
Defendant presented the defenses of misidentification and alibi. In support of the misidentification defense, defendant called Kendrick Delahousseye as a witness. Delahousseye testified that an individual known as Eddie Boo sold crack cocaine in the North Claiborne area. He testified that Eddie Boo's family and defendant's family were close and Eddie Boo frequently visited defendant's mother's house. He further testified that Eddie Boo and defendant were about the same size and height. Defendant testified that Eddie Boo was a close relative of his and visited his mother's house often. Defendant denied selling crack cocaine to Agent Wilson on October 18, and testified that on that date, he was at his girlfriend's apartment in Metairie.
Defendant's girlfriend, Patricia Lampton, testified that in October of 1990, she was living in an apartment on the east bank in Metairie. Her mother lived in the Claiborne Garden area in Westwego. She testified that on October 17, while she was visiting her mother, a shootout occurred around the corner from her mother's house in which three people got shot. She recalled that after the shooting, she and defendant went across the river to her apartment in Metairie and spent the entire day of October 18 (the day of the drug transaction) there. On cross examination, the prosecutor asked Ms. Lampton how she knew the shooting occurred on October 17. She answered that she recalled seeing an article about the shooting in the newspaper on October 18. After the defense rested, the prosecutor called Ms. Lampton as a hostile witness in rebuttal, and introduced copies of the Times-Picayune, showing that the October 18 edition contained no reference to the shooting, but that the October 19 edition referred to a shooting in Westwego. The prosecutor read from the article in the October 19 edition, which stated the shooting took place at 11:45 a.m. The following exchange then took place:
A. I said the accident did take place on the 17th going into the morning. It happened at 2:30 that morning, going into the 18th. That morning we did leave after the shooting and gowent home.
Q. And what morning was that?
A. That was on the 18th.
Q. So, would this have been the shooting?
A. That's the same shooting.
Q. That happened on the 18th?
A. Yes.
Q. At 11:47 A.M.
At this point, defendant objected to the reference to the time of the shooting as being hearsay. The trial judge overruled the *341 objection, and the prosecutor continued to refer to the shooting as having taken place "around noon." On cross-examination by defendant, Ms. Lampton again insisted that the shooting happened at 2:30 in the morning on the "17th, going into the 18th." When asked if there was any way that the shooting could have occurred at 11:47 a.m., she replied "no."
Defendant then moved to have the state produce the police report in case # 90-4617 (the shooting case). Outside the presence of the jury, defendant argued that the police report would show that the shooting really took place at around 3:30 a.m. and the police report would corroborate Ms. Lampton's testimony, thus making it evidence favorable to the defense under Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The trial judge denied the motion and refused to allow a proffer of the report. Defendant then asked to call witnesses on surrebuttal to show the correct time of the shooting. The trial judge denied this motion. During closing arguments, the prosecutor again referred to the 11:45 a.m. time.[3]
In a post-trial motion to set the appeal bond, defendant produced the police report, showing the shooting took place at 12:47 a.m. Defendant also filed a motion for new trial, contending the police report was new evidence. The trial judge denied the motion.
Four issues are presented for our consideration: (1) whether the pre-trial single photograph identification and subsequent in-court identification of defendant made by Agent Wilson should be suppressed; (2) whether the state presented sufficient evidence to prove all elements of the crime; (3) whether the trial judge erred in allowing the state to use the 11:45 a.m. time in the newspaper article to impeach defendant's alibi witness; and (4) whether the trial judge erred in not allowing admission of evidence as to the correct time of the shooting.

Identification and Sufficiency of Evidence
Defendant argues that Agent Wilson's pre-trial and in-court identification of him should be suppressed, contending that the one-photograph procedure was impermissibly suggestive and conducive to irreparable mistaken identity.
Single photograph identifications should be viewed in general with suspicion. Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). Despite the existence of a suggestive pre-trial identification, however, an in-court identification may be permissible if there does not exist a very substantial likelihood of irreparable misidentification. Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); State v. Martin, 595 So.2d 592 (La.1992). Several factors are used to determine, from the totality of the circumstances, whether a suggestive identification presents a substantial likelihood of misidentification: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of his prior description of the criminal; (4) the level of certainty demonstrated at the confrontation; and (5) the time between the crime and the confrontation. Martin, 595 So.2d at 595.
In the present case, even though a single photograph was used, it appears there was little pressure on Wilson to acquiesce in the suggestion that such a display entails. Agent Lore testified that he simply laid the photograph of defendant on his desk, and Wilson walked in his office and said, "that's the guy." Under these circumstances, it seems there was no coercive pressure on Wilson to make an identification. However, even assuming, without deciding, that the identification was suggestive, we find that application of the Manson factors leads to the conclusion that there was no substantial likelihood of irreparable misidentification. Wilson had ample time to view defendant during the transaction, and paid close attention to defendant while face to face with him for over three minutes. His level of certainty was high, and the identification was *342 made the day after the transaction. Accordingly, considering the totality of the circumstances, we find that the photographic identification, even if suggestive, nonetheless produced a reliable identification.
Having found that Agent Wilson's identification should not be suppressed, we now turn to defendant's contention that there was insufficient evidence to convict him of distribution of cocaine. Viewing the evidence in the light most favorable to the prosecution, we find that a reasonable trier of fact could have concluded that the state proved beyond a reasonable doubt that defendant was guilty of distribution of cocaine. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
Accordingly, we conclude defendant's arguments as to these issues are without merit.

Use of the Newspaper Article and Failure to Admit Evidence Showing the Correct Time of the Shooting
Defendant argues that the trial judge erred in failing to sustain his hearsay objection to the prosecutor's use of the time of the shooting in the newspaper article, and by refusing to allow admission of evidence showing the correct time of the shooting.
La.Code Evid. art. 801(C) provides:
"Hearsay" is a statement, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted. (emphasis added)
Arguably, had the newspaper been introduced solely for the purpose of showing that no article about the shooting appeared in the October 18, 1990 edition, it might not have been hearsay. See State v. Jones, 558 So.2d 546, 549 (La.1990). However, it is clear that the prosecutor went beyond this use and relied on the newspaper to prove the truth of the matter asserted, i.e., to show that the shooting took place at 11:45 a.m. on October 18, rather than in the early morning hours of October 18, as Ms. Lampton testified. There is little doubt that the time of the shooting was crucial to Ms. Lampton's alibi testimony. By relying on the 11:45 a.m. time contained in the newspaper article, the prosecutor made Ms. Lampton's testimony implausible and devastated her credibility in the eyes of the jury. Clearly, the trial judge erred in allowing the state to use hearsay evidence for this purpose.[4]
The trial judge further compounded this error by refusing to allow defendant to rehabilitate Ms. Lampton by admitting the police report showing the correct time of the shooting, or to allow defendant to call witnesses on surrebuttal that would testify as to the correct time of the shooting.
La.Code Crim.P. art. 765(5), in listing the normal order of trial, provides the trial court "in its discretion may permit the introduction of additional evidence" prior to closing arguments. In State v. Turner, 337 So.2d 455, 458 (La.1976), we recognized that a defendant could be prejudiced by a denial to him of the opportunity to defend against new issues raised by the prosecution on rebuttal, but that such prejudice "may normally be avoided by the trial court's permitting the defendant to introduce additional evidence to defend against the new issue thereby raised." See also State v. Harrison, 553 So.2d 422 (La.1989).
In the present case, the prosecution introduced a new issue on rebuttal when it referred to the time of the shooting as indicated in the hearsay newspaper article. The introduction of this issue severely damaged the credibility of defendant's alibi witness. Therefore, the trial judge should have exercised his discretion under La.Code Crim.P. art. 765(5) to allow defendant to put on additional *343 evidence showing the correct time of the shooting. The trial judge's refusal to allow admission of such evidence was a clear abuse of discretion that resulted in prejudice to defendant's fundamental right to present a defense. U.S. Const., Amend. VI; La. Const. Art. I, § 16; Washington v. Texas, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967); State v. Vigee, 518 So.2d 501 (La. 1988). Clearly, under the circumstances of this case, this error is not harmless. Accordingly, we must reverse defendant's conviction and sentence and remand the case to the trial court for a new trial.

DECREE
For the reasons assigned, the judgment of the court of appeal affirming defendant's conviction and sentence is reversed. The case is remanded to the district court for a new trial.
NOTES
[*] Judge Felicia Toney Williams, Court of Appeal, Second Circuit, participating as Associate Justice Pro Tempore. Calogero, C.J. (recused) not on panel. Rule IV, Part 2, § 3.
[1] 625 So.2d 534 (La.App. 5th Cir.1993).
[2] 93-2682 (La. 6/3/94); 637 So.2d 485.
[3] The prosecutor stated in his closing argument:

The Times-Picayune is on trial here. The times of the shooting: the paper was 11:45 a.m. She said, "Well, it occurred between the 17th and the 18th at 2:30 in the morning." It either happened on the 17th or it happened on the 18th, but we know one thing for sure: Andrew Harper did not spend the 18th, the day that he sold those drugs to Cory Wilson on the eastbank with Miss Lampkins [sic].
[4] The state argues that the actual time of the shooting was irrelevant, since Ms. Lampton's credibility was already destroyed when it was shown that no article about the shooting appeared in the October 18th edition of the newspaper. This argument lacks merit. Ms. Lampton did not testify unequivocally that she read the article on October 18th, since at one point, she testified, "[i]t could have been the 18th; it could have been the 19th." Moreover, the whole thrust of Ms. Lampton's testimony was that she and defendant left after the early morning shooting and spent the next day (the day of the drug transaction) at her apartment in Metairie. By relying on the incorrect 11:45 a.m. time, the prosecution made Ms. Lampton's testimony completely unbelievable.