MARC E. JOHNSON, Judge.
 

 | ^Defendant, Isaac Jones, appeals his convictions for felon in possession of a firearm in violation of LSA-R.S. 14:95.1, possession with intent to distribute marijuana in violation of LSA-R.S. 40:966(A), possession of cocaine between 28 and 199 grams in violation of LSA-R.S. 40:967(F), and possession of a firearm with an obliterated serial number in violation of LSA-R.S. 40:178s.
 
 [1]
 
 We affirm.
 

 Procedural History
 

 Defendant was charged with all four offenses in a bill of information on August 6, 2007. He pled not guilty and proceeded to trial on July 15, 2008. After a two-day trial, a unanimous 12-person jury found him guilty as charged on all four counts. The trial court sentenced defendant to 15 years at hard labor without parole, probation or suspension of sentence on count one (felon in possession of a firearm), 30 years at hard labor on count two (possession with intent to distribute marijuana), 30 years at hard labor with the first five years without the benefit of | ¡¡parole, probation or suspension of sentence on count three (possession of cocaine between 28-199 grams), and five years at hard labor on count four (possession of a firearm with an obliterated serial number). The sentences on counts two and three were ordered to run concurrently with each other and the sentences on counts one and four were ordered to run consecutively to the other sentences.
 

 The State filed a multiple offender bill of information seeking to enhance defendant’s sentence, on count three based on two prior convictions. After a hearing, the trial court found defendant to be a third felony offender. The trial court vacated defendant’s original 30-year sentence on count three and imposed an enhanced sentence of 40 years at hard labor without the benefit of probation and suspension of sentence and with the first five years without the benefit of parole. The trial court ordered defendant’s enhanced sentence to run concurrently with his other sentences.
 
 Facts
 

 The evidence at trial shows that between 7:00-7:30 p.m. on April 22, 2005, Sergeants Shane Klein and Curtis Matthews were on patrol in the Pebble Walk area of Harvey near the Emerald Point Apartments in an unmarked police unit. Sgt. Klein saw two men standing near a white convertible
 
 *313
 
 Pontiac Firebii'd and observed what he believed to be a hand-to-hand narcotics transaction. The officers approached the men in their police unit to further investigate. According to Sgt. Klein, defendant made eye contact with the officers and jumped into his vehicle while the second man fled through the apartment complex. Sgt. Klein exited his vehicle to approach defendant at which time defendant put his vehicle in reverse almost striking Sgt. Klein and the police unit. Sgt. Klein returned to his car and a chase ensued.
 

 I/The car chase lasted approximately 30-40 seconds before defendant crashed his car into several mailboxes and fled on foot. Sgt. Klein exited his vehicle and pursued defendant. During the foot chase, defendant discarded a bag containing marijuana and a bag containing crack cocaine, which Sgt. Klein retrieved. Sgt. Klein continued to chase defendant but ultimately lost sight of him near Building 26 of the Emerald Point apartment complex.
 

 Other officers set up a perimeter around the area in an attempt to catch defendant. Meanwhile, Sgt. Klein returned to defendant’s car where he found another bag of marijuana near the rear driver’s side tire. He looked inside the car where the keys were still in the ignition. He saw a marijuana cigar, or “blunt,” in the ashtray and found a traffic citation issued to “Isaac Jones” in the car. The name on the traffic citation was used to obtain a photograph, which was shown to Sgt. Klein and Sgt. Matthews. Sgt. Klein identified the man in the photograph as the same person he was chasing and the same person he saw involved in the hand-to-hand transaction. Sgt. Matthews also identified the man in the photograph as the same person who was engaged in the hand-to-hand transaction and who fled in the vehicle. Further, a loaded .40 Glock firearm was found under the hood of the car.
 

 Lieutenant Robert Gerdes recognized the white convertible Firebird as being parked near Building 26 on several occasions over the past few months. Lt. Gerdes explained that the neighborhood was part of Project Safe Neighborhood, a program funded by federal grants to provide extra patrols in high-crime areas, and that he was familiar with the area from his own patrols of the neighborhood. Upon learning this, the officers retrieved the keys from the Firebird and went to Building 26 to see if any of the keys fit any of the apartments. They knocked on the door of the first apartment, number 647, but there was no answer. They then tried a key and the key fit. Sgt. Klein stated they went inside the apartment to secure it and to |fiprevent the destruction of evidence. After determining that no one was in the apartment, the officers locked the door to the apartment and posted officers at the door while a search warrant was obtained.
 

 Sgt. Klein obtained and executed a search warrant for the apartment on the same day as the incident. A grey t-shirt and a pair of ripped blue jeans, both of which were damp, were found in a closet. Sgt. Klein stated these were the same clothes he saw defendant wearing. He further explained that during the chase, defendant ripped his clothes when he climbed over a fence. The search also yielded narcotics. Crack cocaine was found in the pocket of a jacket along with a credit card and identification card in defendant’s name and ten to fifteen bags of marijuana were found in a Reebok shoebox. Additional crack cocaine and marijuana were found throughout the apartment. Also, a gun with the serial number scraped off was discovered and items used for distributing cocaine, such as a glass container that field tested positive for cocaine, a digital scale, a razor blade and
 
 *314
 
 sandwich bags, were found. Paperwork belonging to defendant, pictures of defendant, a temporary license plate tag that matched the one listed on the traffic citation found inside the Firebird, and a phone bill for the cell phone found inside the Firebird were all found in the apartment.
 
 Sufficiency of the evidence
 

 Defendant argues the evidence was insufficient to support his convictions on all four counts.
 
 [2]
 
 He contends the State failed to prove he was in either actual or constructive possession of the drugs and the firearms. As to count one, felon in possession of a firearm, defendant maintains he was never in actual possession of the firearm under the hood of the car. He also asserts there was no nexus between | Rhim and the firearm for purposes of constructive possession because he did not own the car and there was no evidence that he was aware the firearm was there. As to the drugs and firearm with the obliterated serial number found in the apartment, defendant argues there was no evidence he had dominion and control over the drugs or firearm in the apartment. He maintains there was no evidence he was more than a visitor to the apartment or when he was last present in the apartment.
 

 The standard of review for the sufficiency of the evidence to uphold a conviction is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could conclude that the State proved the essential elements of the crime beyond a reasonable doubt.
 
 Jackson v. Virginia,
 
 443 U.S. 307, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).
 

 Defendant first challenges the evidence relating to his conviction for felon in possession of a firearm. In order to convict a defendant of illegal possession of a firearm by a convicted felon, the State must prove beyond a reasonable doubt that the defendant had (1) possession of a firearm, (2) a prior conviction for an enumerated felony, (3) an absence of the ten-year statutory period of limitation, and (4) the general intent to commit the offense. LSA-R.S. 14:95.1;
 
 State v. Anderson,
 
 08-456, p. 6 (La.App. 5 Cir. 1/13/09), 8 So.3d 602, 606. In the present case, the controverted issue is whether defendant possessed the weapon and had the requisite intent to possess the weapon.
 

 Actual possession of a firearm is not necessary to prove the possession element of LSA-R.S. 14:95.1. Constructive possession is sufficient to satisfy the element of possession.
 
 State v. Day,
 
 410 So.2d 741, 743 (La.1982);
 
 State v. Anderson, supra.
 
 A person is in constructive possession of a firearm if the firearm is subject to his dominion and control.
 
 State v. Johnson,
 
 03-1228, p. 5 (La] 74/14/04), 870 So.2d 995, 998. A person’s dominion over a weapon constitutes constructive possession even if it is only temporary in nature and even if control is shared.
 
 Id.,
 
 03-1228 at 5, 870 So.2d at 999.
 

 A defendant’s mere presence in an area where a firearm was found does not necessarily establish possession.
 
 Id.
 
 The State must prove that the offender was aware that a firearm was in his presence and that the offender had the general intent to possess the weapon. Guilty knowledge may be inferred from the circumstances and proved by direct or circumstantial evidence.
 
 Johnson,
 
 03-1228 at 5, 870 So.2d at 998.
 

 
 *315
 
 In the present case, a loaded .40 Glock firearm was found under the hood of the car defendant was driving. The firearm was submitted for fingerprint testing, but a usable fingerprint could not be obtained. Lieutenant Kelly Carrigan explained that only five percent of firearms yield usable fingerprints.
 

 We find defendant had constructive possession and was aware of the gun under the hood of the car. The vehicle was registered to a family member of defendant, and the evidence showed this was not the first time defendant had driven the car. Specifically, a traffic citation issued to defendant while he was driving the vehicle five months before the current incident was found in the vehicle. Additionally, a receipt for repairs to the convertible portion of the car in defendant’s name dated one month before the present incident was found in the apartment where defendant’s other personal belongings were found. The receipt indicates defendant paid over $1,100 for repairs to the vehicle. This evidence sufficiently shows defendant exercised dominion and control over the vehicle and, thus, was in constructive possession of the gun under the hood of the car.
 

 As for defendant’s guilty knowledge, defendant fled from the police when they approached to investigate what they believed to be a hand-to-hand drug ^transaction. Sgt. Klein, who qualified as an expert in the use, packaging, distribution and value of drugs, testified that it was common for drug dealers to carry handguns. He further explained that drug dealers conceal the guns in several different places within the vehicle, including under the hood of the vehicle, in order to hide the gun from the police. The record shows defendant discarded bags of marijuana and crack cocaine, packaged for distribution, while fleeing from the police. Additionally, items used in the packaging of drugs for distribution, namely glass beakers, a digital scale, a razor blade, and two boxes of sandwich bags, were found in the apartment where defendant’s personal belongings were found.
 

 Under these circumstances, we find defendant was in constructive possession of and knew of the gun found under the hood of the car.
 

 Defendant also challenges his other three convictions, possession of the gun with an obliterated serial number, possession of marijuana with intent to distribute and possession of cocaine over 28 grams, on the sole basis that the State failed to prove he possessed the gun found in the apartment and the drugs found in the apartment and car. The gun with an obliterated serial number was found in a closet of an apartment containing some of defendant’s personal belongings. Marijuana and cocaine were also found in the closet and kitchen of the apartment. Additionally, marijuana was found in the vehicle defendant was driving.
 

 LSA-R.S. 40:1788(B) makes it illegal for anyone to possess a firearm with an altered or obliterated serial number. Since the statute does not make “actual” possession a necessary element of the offense or specifically require that the defendant have the firearm on his person to be in violation, it is sufficient that the defendant is in constructive possession of the firearm. |9
 
 See State v.
 
 Day, 410 So.2d at 743. Possession of marijuana with intent to distribute and possession of cocaine likewise only require constructive possession of the drug and not actual possession.
 
 See State v. Brisban,
 
 00-3437, p. 8 (La.2/26/02), 809 So.2d 923, 929;
 
 State v. Gilbert,
 
 02-922, p. 5 (La.App. 5 Cir. 1/28/03), 839 So.2d 250, 254. Thus, the issue is whether defendant had dominion and control over the apartment where the gun and drugs were found.
 

 
 *316
 
 Defendant’s name was not on the lease of the apartment. However, the evidence shows a connection between defendant and the apartment. Defendant was seen exiting the apartment shortly after the incident with a female and small child. A search of the apartment, conducted as a result of a search warrant, yielded the following: male clothing, sizes XXL-XXXL, fitting defendant’s large frame in a bedroom closet; a Wal-Mart picture envelope with defendant’s name; a jacket with cocaine and a credit card and identification card in defendant’s name in the pocket; a cell phone bill in defendant’s name matching the cell phone found in the vehicle defendant was driving; a temporary tag for the vehicle; pictures of defendant with kids; various mail addressed to defendant; a grey shirt that defendant was seen wearing when he fled from the police; and, blue jeans defendant was wearing when he fled from the police that had marijuana in the pocket. Additionally, the packaged drugs found in the apartment matched the packaging of the drugs defendant discarded during the chase. Sgt. Klein explained that the similar packaging was significant because the packaging was unique and showed that it all was packaged by the same person, who in this case was defendant. Furthermore, defendant had been in possession of the key to the apartment, which was on the key ring with the key to the car defendant was driving. Thus, the evidence shows defendant had sufficient dominion and control over the apartment to constitute constructive possession and awareness of the drugs and gun seized therein.
 

 110Regarding the marijuana found in the ashtray of the car, we have already determined that defendant had dominion and control of the car. It is presumed that the sole occupant of a vehicle has dominion and control over the contents of the vehicle, including drugs that are within the occupant’s immediate reach.
 
 State v. Burbank,
 
 07-125, p. 5, (La.App. 5 Cir. 10/30/07), 971 So.2d 1173, 1177,
 
 writ denied,
 
 07-2287 (La.4/25/08), 978 So.2d 364. Although the record in the present case does not indicate whether the marijuana in the ashtray was in plain view, we find that the marijuana in the ashtray was within the immediate reach of defendant when he was driving the car. Additionally, defendant fled when approached by the police and discarded marijuana during the chase. Accordingly, the record shows defendant had constructive possession and knowledge of the marijuana found in the ashtray of the car.
 

 We find that there was sufficient evidence for the jury to conclude beyond a reasonable doubt that defendant was in constructive possession of the gun under the hood of the car, the marijuana in the ashtray of the car, and the gun and drugs found in the apartment.
 

 Motion to Suppress the Evidence
 
 — War-
 
 rantless Search of Automobile
 

 Defendant next argues the warrantless search of the vehicle was unconstitutional. He maintains there were no exigent circumstances to justify the search under the automobile exception to the warrant requirement because he was not at the scene. Defendant asserts there was no reason the officers could not obtain a search warrant. He further contends the keys obtained from the illegal search of the car resulted in an illegal search of the apartment and all evidence found therein should be excluded as fruit of the poisonous tree.
 

 The Fourth Amendment to the United States Constitution and Article I, § 5 of the Louisiana Constitution prohibit unreasonable searches and seizures. If
 
 11
 
 evidence is derived from an unreasonable search or seizure, the proper remedy
 
 *317
 
 is exclusion of the evidence from trial.
 
 State v. Leonard,
 
 06-361, p. 4 (La.App. 5 Cir. 10/31/06), 945 So.2d 764, 766.
 

 Warrantless searches and seizures are
 
 per se
 
 unreasonable unless justified by one of the exceptions to the warrant requirement. One exception to the prohibition against warrantless searches is the “automobile exception.”
 
 State v. Joseph,
 
 02-717, p. 3 (La.App. 5 Cir. 6/27/03), 850 So.2d 1049, 1051,
 
 writ denied,
 
 04-2404 (La.6/17/05), 904 So.2d 686.
 

 In
 
 Pennsylvania v. Labron,
 
 518 U.S. 938, 940, 116 S.Ct. 2485, 2487, 135 L.Ed.2d 1031 (1996) (per curiam), the United States Supreme Court held that if a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment permits the police to search the vehicle without more. In
 
 Maryland v. Dyson,
 
 527 U.S. 465, 466-67, 119 S.Ct. 2013, 2014, 144 L.Ed.2d 442 (1999) (per curiam), the Supreme Court explained that the “automobile exception” had no separate exigency requirement. Further, the Louisiana Supreme Court has recognized that there is no constitutional distinction between seizing and holding a car before presenting the probable cause issue to a magistrate and immediately searching the vehicle without a warrant.
 
 State v. Tatum,
 
 466 So.2d 29, 31 (La.1985).
 

 When the constitutionality of a warrantless search or seizure is placed at issue by a motion to suppress the evidence, the State bears the burden of proving that the search and seizure was justified pursuant to one of the exceptions to the warrant requirement. LSA-C.Cr.P. art. 703(D);
 
 State v. Joseph,
 
 02-717 at 4, 850 So.2d at 1052. The trial court’s decision to deny a motion to suppress is afforded great weight and will not be set aside unless the preponderance of the evidence clearly favors suppression.
 
 Id.
 

 | ^Defendant argues there were no exigent circumstances to justify a search of the car and that the officers should have obtained a search warrant. As stated above, the automobile exception does not require exigency. In
 
 Maryland v. Dyson, supra,
 
 the United States Supreme Court reversed a state appellate court’s decision that found a vehicle search was unlawful because there was no exigency that prevented or made it difficult for the police to obtain a warrant. After noting that the state appellate court had found there was probable cause that the car contained contraband, the Supreme Court stated, “[t]his finding alone satisfies the automobile exception to the Fourth Amendment’s warrant requirement.”
 
 Maryland v. Dyson,
 
 527 U.S. at 467, 119 S.Ct. at 2014.
 

 Thus, the issue in the present case is whether the officers had probable cause to believe the car contained contraband. Probable cause means “a fair probability that contraband ... will be found.”
 
 Illinois v. Gates,
 
 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983). Whether probable cause exists must be judged by the probabilities and practical considerations of everyday life on which average people, and particularly average police officers, can be expected to act.
 
 State v. Fischer,
 
 97-1133, p. 8 (La.9/9/98), 720 So.2d 1179, 1184.
 

 Sgt. Klein observed defendant conduct what he believed to be a hand-to-hand drug transaction. When Sgt. Klein approached defendant, defendant jumped into a white convertible Firebird and fled. Defendant crashed the vehicle into several mailboxes before jumping out of the car and fleeing on foot. Sgt. Klein pursued defendant on foot and observed him discard two bags. Sgt. Klein retrieved the bags and discovered one bag contained marijuana and the other contained cocaine. After losing sight of defendant, Sgt. Klein
 
 *318
 
 returned to the car where he observed yet another bag of marijuana, similarly packaged to the marijuana defendant discarded, on the ground next to the car. Based on these facts, the | ^officers had sufficient probable cause to believe the vehicle contained contraband so as to justify a war-rantless search of the vehicle under the automobile exception. Furthermore, we note that the vehicle was readily movable as evidenced by the fact the keys were left in the ignition.
 

 Accordingly, we find no error in the trial court’s denial of defendant’s motion to suppress the evidence based on the warrant-less search of the vehicle.
 

 Motion to Suppress Identification
 

 Defendant next asserts the trial court erred in refusing to suppress Sergeant Klein’s identification of him as the perpetrator because the single photograph identification process used was inherently suggestive. He contends there was a substantial likelihood of misidentification as evidenced by the fact Sgt. Klein’s description of the perpetrator as having “cornrows” in his hair did not match defendant’s hairstyle. The State responds there was no substantial likelihood of misidentification since Sgt. Klein got a close look at the perpetrator, was positive in his identification, and viewed the photograph within minutes of the incident.
 

 A defendant challenging an identification procedure has the burden of proving the identification was suggestive and there was a substantial likelihood of misidentification as a result of the identification process.
 
 State v. Thibodeaux,
 
 98-1673, pp. 20-21 (La.9/8/99), 750 So.2d 916, 932,
 
 cert. denied,
 
 529 U.S. 1112, 120 S.Ct. 1969, 146 L.Ed.2d 800 (2000);
 
 State v. Hurd,
 
 05-258, p. 6 (La.App. 5 Cir. 11/29/05), 917 So.2d 567, 570,
 
 writ denied,
 
 06-1128 (La.11/17/06), 942 So.2d 530. An identification procedure is suggestive if, during the procedure, the witness’s attention is unduly focused on the accused.
 
 State v. Broadway,
 
 96-2659, p. 14 (La.10/19/99), 753 So.2d 801, 812,
 
 cert. denied,
 
 529 U.S. 1056, 120 S.Ct. 1562, 146 L.Ed.2d 466 (2000);
 
 State v. Robinson,
 
 07-832, p. 12 (LaApp. 5 Cir. 4/15/08), 984 So.2d 856, 865,
 
 writ denied,
 
 08-1086 (La.12/19/08), 996 So.2d |,41132. Even if an identification procedure is suggestive, it is the likelihood of misidentification, not the mere existence of suggestiveness, which violates due process.
 
 State v. Hurd,
 
 05-258 at 6, 917 So.2d at 570.
 

 Single photograph identifications are generally viewed by the courts with suspicion.
 
 Simmons v. United States,
 
 390 U.S. 377, 383, 88 S.Ct. 967, 970-71, 19 L.Ed.2d 1247 (1968);
 
 State v. Harper,
 
 93-2682, p. 5 (La.11/30/94), 646 So.2d 338, 341. However, their suggestive nature will not
 
 per se
 
 preclude admissibility unless there was a substantial likelihood of misidentifi-cation under the totality of the circumstances.
 
 State v. Martin,
 
 595 So.2d 592, 596-97 (La.1992).
 

 In
 
 Manson v. Brathwaite,
 
 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977), the United States Supreme Court allowed evidence of a suggestive pretrial identification from a single photograph by an undercover police agent after determining the identification was reliable and there was not a substantial likelihood of irreparable mis-identification. The Supreme Court explained that “reliability is the linchpin in determining the admissibility of identification testimony.”
 
 Id.,
 
 432 U.S. at 114, 97 S.Ct. at 2253.
 

 In determining the reliability of an identification and whether a suggestive identification presents a substantial likelihood of misidentification, several factors should be considered: (1) the witness’ opportunity to view the criminal at the time
 
 *319
 
 of the crime, (2) the witness’ degree of attention, (3) the accuracy of his prior description of the criminal, (4) the level of certainty demonstrated at the confrontation, and (5) the time between the crime and the confrontation.
 
 Manson v. Brathwaite,
 
 432 U.S. at 114, 97 S.Ct. at 2253.
 

 In
 
 State v. Harper,
 
 93-2682 at 6, 646 So.2d at 341-42, the Louisiana Supreme Court found there was no substantial likelihood of irreparable misidentification despite a single photograph identification. In
 
 Harper,
 
 an | ^undercover agent conducted a controlled drug buy from the defendant. An officer on the cover team identified the defendant by name and obtained a photograph. The officer showed the photograph to the undercover agent who identified the person in the photograph as the person who sold him cocaine. Noting that single photograph identifications are generally viewed with suspicion, the supreme court assumed, without deciding, that the identification was suggestive.
 
 Id.,
 
 93-2682 at 5, 646 So.2d at 341.
 

 The supreme court then applied the
 
 Manson
 
 factors and concluded there was no substantial likelihood of misidentification. The supreme court noted the undercover agent, who made the identification, (1) had ample time to view the defendant during the transaction, (2) paid close attention to the defendant while face-to-face with him for over three minutes, (3) had a high level of certainty in his identification, and (4) made the identification the day after the transaction.
 
 Harper,
 
 93-2682 at 5-6, 646 So.2d at 341-42.
 

 Additionally, in
 
 State v. Goldston,
 
 35,-271, p. 25 (La.App. 2 Cir. 12/5/01), 804 So.2d 141, 156, the Second Circuit found the defendant failed to prove there was a substantial likelihood of misidentification in the single photograph identification. In
 
 Goldston,
 
 a state witness was shown a single photograph, which she identified as the defendant. The court noted that the witness had already given a statement to the police and that the photograph merely confirmed the information she had previously given to the police. The court applied the
 
 Manson
 
 factors and found that despite the existence of any suggestive identification, there was not a substantial likelihood of misidentification. The court noted the defendant did not match all of the descriptions given by the witness. Specifically, the witness described the perpetrator as having tattoos on his face and knuckles, which the defendant did not have. However, the witness also described the perpetrator as | ^having gold teeth, which the defendant had. The court determined that although some of the witness’s descriptions of the defendant were inaccurate, her level of certainty in her identification and the degree of attention balanced the factors.
 
 Id.,
 
 35,271 at 24-25, 804 So.2d at 156.
 

 In the present case, even assuming the single photograph identification was suggestive, there was not a substantial likelihood of irreparable misidentification. The record
 
 [3]
 
 shows Sgt. Klein had ample opportunity to view the perpetrator. He explained it was not dark when he first saw and made eye contact with the suspect 35 to 40 yards away. He stated he had a clear view of the suspect. At one point during the lengthy foot chase, Sgt. Klein stated the suspect looked tired and worn out after climbing a fence, at which time
 
 *320
 
 he and the suspect just looked at each other through the fence. There is no indication the perpetrator wore a mask over his face or attempted in any way to conceal his identity. Sgt. Klein had just observed what he believed to be a drug transaction and was pursuing the suspect on foot after a car chase. He testified that it was common for drug dealers to carry handguns. Thus, Sgt. Klein’s degree of attention on the perpetrator was high.
 

 Also, defendant’s description of the perpetrator matched defendant in all respects except hairstyle. During the foot pursuit, Sgt. Klein put out a physical description of the suspect that described the suspect as a black male with “cornrows,” six feet tall, approximately 250 pounds, wearing a grey shirt and blue jeans. Sgt. Klein explained “cornrows” as braided lines of hair. Approximately 15 minutes after Sgt. Klein had lost the suspect, defendant was stopped by another officer because he matched the description of the suspect who ran from Sgt. Klein. However, defendant was released because he did not have “cornrows” in his hair, [ 17but rather had a medium length afro-type hairstyle. Sgt. Klein testified that it was not uncommon for people involved in criminal conduct to alter then* appearance. A rational trier of fact could reasonably conclude that defendant may have unbraided his hair or taken the cornrows out of his hair during the interim. A grey shirt and blue jeans, both of which were damp, were found in an apartment defendant was seen exiting shortly after the incident. The blue jeans were ripped, which was consistent with Sgt. Klein’s testimony that the suspect’s clothes ripped as he climbed over the fence.
 

 Additionally, there was no evidence Sgt. Klein ever demonstrated any doubts about his identification of defendant as the perpetrator. Only a short time elapsed between Sgt. Klein s encounter with the perpetrator and his identification of defendant from the photograph. In fact, Sgt. Klein made the identification the same evening while still on the scene. Furthermore, defendant’s personal property, consisting of a cell phone and traffic citation, were recovered from the vehicle defendant was driving, which was left at the scene.
 

 Under these circumstances, we find the photographic identification, even if suggestive, was reliable because there was no substantial likelihood of misidentification. Only minutes passed from Sgt. Klein’s encounter with the suspect and his identification of defendant from the photograph, and Sgt. Klein’s description of the suspect matched defendant in all respects except hairstyle, which can readily be changed. As such, we find no error in the trial court’s denial of defendant’s motion to suppress identification.
 

 Multiple Offender Adjudication
 

 In his fourth assignment of error, defendant contends the State failed to prove his status as a multiple offender because it failed to prove his two predicate guilty pleas were knowing and voluntary. Defendant specifically asserts the State 11 failed to offer evidence of a plea colloquy as to either of the two predicate offenses. The State responds defendant did not file a written objection to the multiple bill and, therefore, failed to preserve the issue for appeal.
 

 We agree with the State. Defendant failed to file a written response to the bill of information, setting forth with particularity his claim and the factual basis for it, as mandated by LSA-R.S. 15:529.1(D)(1 )(b). In addition, defendant failed to make any objections at the habitual offender hearing. Specifically, he did not object to the absence of the
 
 Boykin
 
 transcripts.
 

 
 *321
 
 In
 
 State v. Windham,
 
 93-686 (La.12/20/93), 630 So.2d 688, 688 (per cu-riam), the Louisiana Supreme Court stated:
 

 In the absence of a contemporaneous objection at the multiple offender hearing, the defendant otherwise may not complain for the first time on review that the records of his guilty pleas introduced by the State at the multiple offender hearing did not reflect compliance with this court’s Boykin rules.
 

 Similar to the present case, the defendant in
 
 State v. Richmond,
 
 98-1015, pp. 5-6 (La.App. 5 Cir. 3/10/99), 734 So.2d 33, 36-37, complained that her habitual offender adjudication was invalid because the State had failed to produce
 
 Boykin
 
 transcripts of her prior guilty pleas. Citing Windham,
 
 supra,
 
 this Court declined to consider the defendant’s argument because she had not stated her objections in a written response, had not orally objected at the habitual offender hearing, and had not challenged the State’s proof of her guilty pleas or their compliance with
 
 Boy-kin
 
 at any time before her sentence was imposed.
 

 Likewise, because defendant in the present case did not file a written response to the multiple bill or object at the habitual offender hearing, he is | ^precluded from raising the issue of the State’s proof regarding his predicate guilty pleas on appeal.
 
 [4]
 

 Excessive Sentences
 

 In defendant’s fifth assignment of error, he argues his maximum sentences on all counts are unconstitutionally excessive. He contends the evidence against him was weak; specifically, that there was no evidence connecting him to the residence where the drugs and gun were found.
 

 After original sentencing, defendant timely filed a motion to reconsider sentence on the basis his sentences were excessive. He filed a second motion to reconsider sentence after he was sentenced as a multiple offender alleging his sentence was unconstitutionally excessive and that the trial court failed to consider mitigating circumstances. Both motions were denied.
 

 The Eighth Amendment to the United States Constitution and Article I, § 20 of the Louisiana Constitution prohibit the imposition of excessive punishment. A sentence is considered excessive, even when it is within the applicable statutory range, if it is grossly disproportionate to the offense or imposes needless and purposeless pain and suffering.
 
 State v. Pearson,
 
 07-332, p. 15 (La.App. 5 Cir. 12/27/07), 975 So.2d 646, 655.
 

 In reviewing a sentence for ex-cessiveness, the appellate court must consider the punishment and the crime in light of the harm to society and gauge whether the penalty is so disproportionate as to shock the sense of justice.
 
 Id.
 
 A trial judge has broad discretion when imposing a sentence, and a reviewing court may not set a sentence aside absent a manifest abuse of discretion.
 
 State v. Dorsey,
 
 07-67, p. 5 (La.App. 5 Cir. 5/29/07), 960 So.2d 1127, 1130. The issue on appeal is whether the trial court abused its discre
 
 *322
 
 tion, not whether another sentence might have been more appropriate.
 
 Id.
 

 In reviewing a trial court’s sentencing discretion, three factors are considered: 1) the nature of the crime, 2) the nature and background of the offender, and 3) the sentence imposed for similar crimes by the same court and other courts.
 
 State v. Pearson,
 
 07-332 at 15-16, 975 So.2d at 656.
 

 Defendant challenges all four of his sentences as excessive.
 
 [5]
 
 Defendant received maximum sentences on all four counts. However, his sentence on count three, possession of cocaine between 28-199 grams, was vacated and a mid-range enhanced sentence of 40 years was imposed under LSA-R.S. 15:529.1(A)(l)(b)(i). Any claim of the excessiveness of the original sentence as to count three is moot, and it does not appear defendant challenges his mid-range enhanced sentence. Therefore, a review of defendant’s sentences for ex-cessiveness is conducted as to his sentences on counts one, two and four only.
 

 On count one, felon in possession of a firearm, defendant received a 15-year sentence at hard labor with the benefit of parole, probation or suspension of sentence. The sentencing range for the offense is 10 to 15 years at hard labor without the benefit of parole, probation, or suspension of sentence and a fine between $1,000 and $5,000. LSA-R.S. 14:95.1(B). Defendant did not receive the mandatory fine and, therefore, actually received an illegally lenient sentence.
 

 As to count two, possession of marijuana with intent to distribute, the sentencing range is five to 30 years at hard labor and a fine of “not more than fifty |⅞1 thousand dollars.” LSA-R.S. 40:966(B)(3). Defendant received a sentence of 30 years at hard labor with no fine.
 

 And, as to count four, possession of a firearm with an obliterated serial number, defendant faced a sentencing range of one to five years with or without hard labor and a fine between $500 and $2,000. LSA-R.S. 40:1791. He received five years at hard labor and no fine.
 

 In imposing sentence, the trial judge stated that he had reviewed defendant’s rap sheet and noted defendant had an extensive criminal history, including two prior felony convictions and numerous arrests on serious charges. The trial judge further noted defendant tried to run over a police officer in his attempt to flee. The trial judge also commented on the amount of narcotics and instruments to make crack cocaine found in the apartment and the fact a child’s bicycle in the apartment indicated the drugs were laid out in a child’s presence.
 

 We do not find defendant’s maximum sentences unconstitutionally excessive. In
 
 State v. Warmack,
 
 07-311, p. 8 (La.App. 5 Cir. 11/27/07), 973 So.2d 104, 109, this Court upheld a maximum 15-year sentence for the defendant’s conviction for possession of a firearm by a felon. This Court noted the defendant had three prior convictions for various drug offenses and ran from the police. This Court also noted the gun he possessed was fully loaded. Likewise, in the present case, defendant had prior convictions for drug offenses,
 
 *323
 
 ran from the poliee, and the gun he possessed was loaded.
 

 In
 
 State v. Sarrio,
 
 04-89, p. 7 (La.App. 5 Cir. 5/26/04), 875 So.2d 898, 902,
 
 writ denied,
 
 04-1579 (La.11/15/04), 887 So.2d 474, this Court upheld the defendant’s maximum 30-year sentence for possession of marijuana with intent to distribute noting that the defendant ran a large-scale narcotics distribution operation. Also, in
 
 State v. Brown,
 
 03-581, pp. 16-17 (La.App. 5 Cir. 11/12/03), 861 So.2d 644, 655,
 
 writs denied,
 
 03-3407 (La.4/2/04), 869 So.2d 875 and 04-49 (La.4/2/04), 869 So.2d 877, this Court found the defendant’s maximum 30-year sentence for possession of marijuana with intent to distribute not to be excessive. This Court noted the defendant was in possession of a large amount of marijuana at the time of his arrest and had a prior record of drug arrests. This Court concluded the trial court did not abuse its sentencing discretion. Likewise, in the present case, the record shows defendant possessed a significant amount of marijuana, over 431 grams of marijuana, and had a history of prior drug convictions.
 

 Although we found no jurisprudence involving the excessiveness of a maximum sentence for possession of a firearm with an obliterated serial number, we do not find defendant’s maximum five-year sentence for possession of a firearm with an obliterated serial number to be unconstitutionally excessive. As noted by the trial court, defendant had a lengthy criminal history consisting of two prior felony drug convictions and numerous arrests for serious charges. His present convictions consisted of two weapons charges and two additional drug offenses. Considering defendant’s criminal history, the fact he fled from the police almost striking an officer with his car, and the fact a loaded firearm was hidden under the hood of the car in an apparent attempt to hide it from the police, we do not find the trial court abused its discretion in imposing the maximum sentence on all three counts.
 

 Ineffective Assistance of Counsel
 

 In defendant’s final assignment of error, he alleges he received ineffective assistance of counsel on numerous grounds. Specifically, he claims his counsel was ineffective for (1) failing to move to sever the counts, (2) interjecting other crimes evidence regarding the stolen nature of the vehicle abandoned by defendant, (3) failing to object to other crimes evidence when the police stated a firearm with l^an obliterated serial number could have been used in numerous crimes, and (4) failing to object to improper evidence submitted by expert witnesses. As to defendant’s first claim, the State asserts LSA-C.Cr.P. art. 493 permits the joinder of the offenses and defendant has failed to show the joinder was prejudicial. As to defendant’s second and third claims, the State responds that any reference to other crimes or bad acts did not unmistakably point to defendant as committing the other crime and, thus, did not constitute impermissible other crimes evidence. And, regarding defendant’s last claim, the State contends the defendant fails to show how the expert evidence was improper.
 

 A defendant is entitled to effective assistance of counsel under the Sixth Amendment to the United States Constitution and Article I, § 13 of the Louisiana Constitution of 1974. In assessing a claim of ineffectiveness, a two-pronged test is employed. The defendant must show that (1) his attorney’s performance was deficient, and (2) the deficiency prejudiced him.
 
 Strickland v. Washington,
 
 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984);
 
 State v. Soler,
 
 93-1042, p. 9 (La.App. 5 Cir. 4/26/94), 636 So.2d 1069, 1075,
 
 unit denied,
 
 94-1361 (La.11/4/94), 644 So.2d 1055. The error is prejudicial if it
 
 *324
 
 was so serious as to deprive the defendant of a fair trial, or “a trial whose result is reliable.”
 
 Strickland v. Washington,
 
 466 U.S. at 687, 104 S.Ct. at 2064;
 
 State v. Serio,
 
 94-131, p. 4 (La.App. 5 Cir. 7/1/94), 641 So.2d 604, 607,
 
 writ denied,
 
 94-2025 (La.12/16/94), 648 So.2d 388. In order to show prejudice, the defendant must demonstrate that, but for counsel’s unprofessional conduct, the outcome of the trial would have been different.
 
 Strickland v. Washington,
 
 466 U.S. at 694, 104 S.Ct. at 2068;
 
 State v. Soler,
 
 93-1042 at 9, 636 So.2d at 1075.
 

 The Sixth Amendment does not guarantee a defendant errorless counsel or counsel judged ineffective by hindsight.
 
 State v. Cambre,
 
 05-888, p. 25 (La.App. 5 Cir. 7/25/06), 939 So.2d 446, 460,
 
 writ denied,
 
 06-2121 (La.4/20/07), 954 So.2d 158,
 
 citing State v. LaCaze,
 
 99-584, p. 20 (La.1/25/02), 824 So.2d 1063, 1078,
 
 cert. denied,
 
 537 U.S. 865, 123 S.Ct. 263, 154 L.Ed.2d 110 (2002). Ineffective assistance claims are assessed on the facts of the particular case as seen from the counsel’s perspective at the time. As such, there is a strong presumption that counsel’s conduct will fall within the wide range of reasonable professional assistance.
 
 State v. Cambre, supra.
 

 An ineffective assistance of counsel claim is most appropriately addressed through an application for post-conviction relief filed in the trial court where a full evidentiary hearing can be conducted.
 
 State v. Taylor,
 
 04-346, p. 10 (La.App. 5 Cir. 10/26/04), 887 So.2d 589, 595. When the record contains sufficient evidence to rule on the merits of the claim and the issue is properly raised by an assignment of error on appeal, it may be addressed in the interest of judicial economy. Where the record does not contain sufficient evidence to fully explore a claim of ineffective assistance of counsel, the claim should be relegated to post-conviction proceedings under LSA-C.Cr.P. arts. 924-930.8.
 
 Id.
 
 We find the present record sufficient to address defendant’s claims.
 

 a)
 
 Failure to file motion to sever the counts
 

 Defendant first claims he received ineffective assistance of counsel when his trial counsel failed to move to sever the counts. He asserts he was prejudiced because the felon in possession of firearm charge allowed evidence of his prior conviction for possession of cocaine in a trial involving a current charge of possession of cocaine.
 

 LSA-C.Cr.P. art. 493 permits the join-der of offenses if the offenses charged are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together constituting parts of a |2,,common scheme or plan and if the offenses are triable by the same mode of trial. Felony offenses that are not triable by the same mode of trial may still be joined in the same bill of information under the conditions specified in LSA-C.Cr.P. art. 493.2, which provides:
 

 [0]ffenses in which punishment is necessarily confinement at hard labor may be charged in the same indictment or information with offenses in which the punishment may be confinement at hard labor, provided that the joined offenses are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan.
 

 Counts one through three are all punishable by confinement at hard labor, but count four, possession of a firearm with an obliterated serial number, is punishable “with or without” hard labor. LSA-R.S.
 
 *325
 
 40:1791. Thus, all of the counts are not triable by the same mode of trial.
 
 See
 
 LSA-C.Cr.P. art. 782. However, all of the offenses arise from the same underlying facts and, therefore, were properly joined under LSA-C.Cr.P. art. 493.2 in the same bill of information.
 
 See State v. Woods,
 
 08-718, pp. 7-8 (La.App. 5 Cir. 2/10/09), 4 So.3d 248, 252.
 

 A defendant properly charged in the same bill of information may nonetheless move for a severance of the offenses under LSA-C.Cr.P. art. 495.1, which provides:
 

 If it appears that a defendant or the state is prejudiced by a joinder of offenses in an indictment or bill of information or by such joinder for trial together, the court may order separate trials, grant a severance of offenses, or provide whatever other relief justice requires.
 

 A defendant alleging a prejudicial joinder of offenses has a heavy burden of proof.
 
 State v. Burks,
 
 04-1435, p. 7 (La.App. 5 Cir. 5/31/05), 905 So.2d 394, 399,
 
 writ denied,
 
 05-1696 (La.2/3/06), 922 So.2d 1176. Motions to sever under LSA-C.Cr.P. art. 495.1 are within the sound discretion of the trial court and its ruling will not be disturbed on appeal absent an abuse of discretion.
 
 Id.
 

 12ljln the present case, defendant claims the joining of the felon in possession of a firearm offense with the possession of cocaine offense allowed evidence of his prior conviction of possession of cocaine in the same trial as a current charge for possession of cocaine thereby rendering his trial counsel ineffective.
 

 A severance of offenses is not mandated simply on the ground that the offenses would not have been admissible at separate trials if the defendant is not prejudiced by the joinder.
 
 State v. Celestine,
 
 452 So.2d 676, 680 (La.1984). In determining whether prejudice results from a joinder of offenses, the trial court should consider the following factors: (1) whether the jury would be confused by the various counts, (2) whether the jury would be able to segregate the various charges and evidence, (3) whether the defendant would be confounded in presenting his various defenses, (4) whether the crimes charged would be used by the jury to infer a criminal disposition, and (5) whether, considering the nature of the charges, the charging of several crimes would make the jury hostile.
 
 State v. Burks, supra,
 
 citing
 
 State v. Washington,
 
 386 So.2d 1368 (La.1980). No prejudicial effect occurs where the evidence as to each offense is simple and distinct and where the jury can easily keep the evidence in each offense separate in its deliberation.
 
 State v. Celestine, supra.
 

 For purposes of an ineffective assistance of counsel claim, the filing of pretrial motions is squarely within the ambit of the attorney’s trial strategy.
 
 State v. Hollins,
 
 99-278, p. 14 (La.App. 5 Cir. 8/31/99), 742 So.2d 671, 681,
 
 writ denied,
 
 99-2853 (La.1/5/01), 778 So.2d 587. Hindsight is not the proper perspective for judging the competence of counsel’s trial decisions and an attorney’s level of representation may not be determined by whether a particular strategy is successful.
 
 State v. Brooks,
 
 505 So.2d 714, 724 (La.1987), ce
 
 rt. denied,
 
 484 U.S. 947, 108 S.Ct. 337, 98 L.Ed.2d 363 (1987), citing
 
 Strickland v.
 
 |
 
 ^Washington, supra.
 
 The burden is on the defendant to overcome the presumption that, under the circumstances, the challenged action might be considered trial strategy.
 
 Strickland v. Washington,
 
 466 U.S. at 689, 104 S.Ct. at 2065.
 

 We find defendant has failed to show his trial counsel was deficient in failing to seek severance of trial of the various charges or that he was prejudiced in any way. Defendant has failed to demonstrate trial
 
 *326
 
 counsel’s decision to proceed with one trial on all counts was not trial strategy. Additionally, the evidence of each crime was presented in a logical and orderly fashion, there is no indication the jury was confused by the various counts, and there is no evidence defendant was confounded in presenting his defense. Without prejudice, defendant has no claim for ineffective assistance of counsel on this issue.
 

 b)
 
 Introducing other crimes evidence and failing to object to other crimes evidence
 

 Defendant’s next two claims relate to other crimes evidence. He claims his trial counsel offered other crimes evidence when he presented testimony that the vehicle defendant was driving was reported stolen. He also claims his trial counsel failed to object to other crimes evidence when the State offered evidence that a firearm with an obliterated serial number could have been used in numerous crimes.
 

 Generally, evidence of other crimes or bad acts committed by a criminal defendant is not admissible at trial. LSA-C.E. art. 404B(1);
 
 State v. Prieur,
 
 277 So.2d 126, 128 (La.1973). However, when evidence of other crimes tends to prove a material issue and has independent relevance other than to show that the defendant is of bad character, it may be admitted by certain statutory and jurisprudential exceptions to this rule.
 
 State v. Dauzart,
 
 02-1187 (La.App. 5 Cir. 3/25/03), 844 So.2d 159, 165. Evidence of other crimes is allowed to prove 128motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding to such an extent that the State could not accurately present its case without reference to the prior bad act. LSA-C.E. art. 404(B)(1);
 
 State v. Dauzart, supra.
 

 In
 
 State v. Stirgus,
 
 05-259, pp. 12-13 (La.App. 5 Cir. 11/29/05), 917 So.2d 559, 565-66,
 
 writ denied,
 
 06-923 (La.10/27/06), 939 So.2d 1275, the defendant argued he received ineffective assistance of counsel when his trial counsel failed to object to other crimes evidence. This Court found that even if counsel’s failure to object to the admission of other crimes evidence constituted deficient performance, the record failed to show that defendant was prejudiced by counsel’s failure to object. In particular, this Court found that any error was harmless because of the overwhelming evidence against the defendant. As such, this Court concluded the guilty verdict was surely unattributable to any error by trial counsel in failing to object to the admission of other crimes evidence.
 

 Likewise, in the present case, any reference to other crimes evidence was harmless since the evidence against defendant was overwhelming. Defendant was seen conducting what appeared to be a hand-to-hand transaction. Upon the approach of the officers, defendant jumped into the vehicle and fled. After crashing the car, defendant exited the car and fled on foot. While being pursued, defendant discarded two bags containing marijuana and cocaine. Additional marijuana was found in the car and a firearm was hidden under the hood of the car. More marijuana and cocaine, along with instruments and packaging material associated with distribution of narcotics, were found in an apartment containing defendant’s personal belongings. A second weapon was also found in the apartment.
 

 | ^Defendant’s guilty verdict was surely unattributable to any error by defense counsel in introducing evidence that the vehicle defendant was driving may have been stolen and in failing to object to
 
 *327
 
 testimony that a firearm with an obliterated serial number could be used in criminal activity. Thus, defendant has failed to demonstrate that he was prejudiced by his trial counsel’s presentation of this evidence and counsel’s failure to object to any reference of other crimes evidence.
 

 c)
 
 “Improper” evidence
 

 Defendant’s last claim of ineffective assistance of counsel is that his counsel failed to object to improper evidence presented by State’s witnesses, Sgt. Klein, Captain Tim Scanlan, and Lisa Maise. He contends counsel improperly stipulated to Sgt. Klein as an expert witness when he was also a fact witness. Defendant also claims trial counsel failed to object to Captain Scanlan testifying beyond his expertise. Specifically, defendant maintains Captain Scanlan’s testimony about the “CSI effect” went beyond his expertise. And, defendant claims counsel failed to object to Ms. Maise’s testimony about gun laws and the ultimate issue of fact that defendant was guilty of gun crimes.
 

 Defendant fails to cite any legal authority or make any arguments other than mere conclusory statements to support his contention that all of the above evidence was improper. We are unaware of any prohibition against a fact witness from also being qualified as an expert witness. Additionally, Captain Scanlan was qualified as an expert in forensic science, specifically firearms and tool mark examination. During his testimony, Captain Scanlan commented on what he referred to as the “CSI effect.” He stated he was researching the “CSI effect” in connection with his Ph.D. dissertation. He explained the “CSI effect” gives jurors a skewed effect of the true capabilities of forensic science. Defendant fails to demonstrate how this testimony was improper, how he was prejudiced, or how the outcome of the trial | snwould have been different, if Captain Scanlan had not commented on the “CSI effect.” Finally, a review of Ms. Maise’s testimony shows she explained that a convicted felon cannot possess a firearm for ten years and that defendant was so advised during his probation. Again, defendant does not show how this testimony was improper or how he was prejudiced by its introduction.
 

 In summary, defendant has failed to carry his burden of proving that his trial counsel was deficient in failing to object to the above evidence or that he was prejudiced by his counsel’s failure to object. As such, he has not proven his claim of ineffective assistance of counsel.
 

 Error Patent Review
 

 Defendant requests an error patent review but does not brief it. Regardless of whether defendant makes such a request, this Court routinely reviews the record for errors patent in accordance with LSA-C.Cr.P. art. 920;
 
 State v. Oliveaux,
 
 312 So.2d 337 (La.1975);
 
 State v. Hicks,
 
 08-402, p. 13 (La.App. 5 Cir. 12/16/08), 3 So.3d 539, 547.
 

 Defendant received illegally lenient sentences on counts one and four since he did not receive the statutorily mandated fine. LSA-R.S. 14:95.1(B) requires a fine of “not less than one thousand dollars nor more than five thousand dollars” for a felon in possession of a firearm conviction, and LSA-R.S. 40:1791 requires a fine of “not less than five hundred dollars nor more than two thousand dollars” for possession of a firearm with an obliterated serial number conviction. The State neither objected to the illegally lenient sentences at the time of sentencing nor noted the error in its brief on appeal. Our authority to correct an illegally lenient sentence on our own motion is permissive rather than mandatory.
 
 See
 
 LSA-C.Cr.P. art. 882;
 
 State v. Jordan,
 
 02-820, p. 5
 
 *328
 
 (La.App. 5 Cir. 12/30/02), 836 So.2d 609, 614. We decline to exercise our discretion in this case.
 

 | si Additionally, we note defendant did not receive a fíne on count two, possession of marijuana with intent to distribute. LSA-R.S. 40:966(B)(2) requires a fine of “not more than fifty thousand dollars.” This Court has found that the trial court’s failure to impose a fine where the statute requires a fine “of not more than” a stated amount, as in LSA-R.S. 40:966(B)(2), to be an illegally lenient sentence; however, the matter is not free from doubt.
 
 See State v. Kerlec,
 
 06-838, p. 8 (La.App. 5 Cir. 4/11/07), 957 So.2d 810, 814;
 
 State v. Jackson,
 
 04-728, p. 10 (La.App. 5 Cir. 12/14/04), 892 So.2d 71, 78,
 
 writ denied,
 
 05-548 (La.1/9/06), 918 So.2d 1033. Because the matter is not free from doubt, we decline to exercise our discretion to correct defendant’s illegally lenient sentence.
 

 Accordingly, defendant’s convictions and sentences are hereby affirmed.
 

 CONVICTIONS AND SENTENCES AFFIRMED.
 

 [1]
 

 . Defendant's motion for appeal was premature when it was filed after his convictions and imposition of the original sentences but before the multiple offender adjudication and sentence. However, defendant’s subsequent resentencing after his multiple adjudication cured this procedural defect.
 
 See State v. Davis,
 
 07-544, p. 3 (La.App. 5 Cir. 12/27/07), 975 So.2d 60, 63, n. 1,
 
 writ denied,
 
 08-380 (La.9/19/08), 992 So.2d 952.
 

 [2]
 

 .
 
 The State properly notes that defendant did not file a motion for post verdict judgment of acquittal pursuant to LSA-C.Cr.P. art. 821, and that this failure does not preclude appellate review of the sufficiency of the evidence.
 
 See State v. Marcantel,
 
 00-1629, p. 8 (La.4/3/02), 815 So.2d 50, 56, n. 2.
 

 [3]
 

 . In determining whether the trial court's ruling on a motion to suppress is correct, an appellate court is not limited to the evidence presented at the motion to suppress hearing, but also may consider pertinent evidence presented at trial.
 
 State v. Mollette,
 
 08-138, p. 10 (La.App. 5 Cir. 11/25/08), 2 So.3d 461, 467,
 
 writ denied,
 
 09-155 (La. 10/16/09), 19 So.3d 472.
 

 [4]
 

 . Even if we were to consider defendant’s argument, the record shows the State met its initial burden of proof, specifically the existence of the two predicate guilty pleas and that defendant was represented by counsel at the time he entered his plea. Thus, the burden shifted to defendant to show any irregularity in the taking of his pleas.
 
 State v. Shelton,
 
 621 So.2d 769, 779 (La.1993). Defendant offered no evidence of an infringement of his rights or a procedural irregularity in the taking of his pleas and, therefore, the burden never shifted back to the State to prove the constitutionality of the pleas.
 

 [5]
 

 . Defendant does not appear to be challenging the consecutive nature of two of his sentences. However, to the extent he does, it is noted that defendant did not raise the issue of consecutive sentences in the trial court and, therefore, is precluded from raising this issue on appeal. Thus, a review of defendant's sentences is limited to a review for constitutional excessiveness.
 
 See State v. Hawkins,
 
 06-739, p. 22 (La.App. 5 Cir. 9/25/07), 968 So.2d 1082, 1095,
 
 writ denied,
 
 07-2272 (La.4/18/08), 978 So.2d 347.